CHARLES BRACKEN v. ENOCH C. MARCH.

1. *One S. purchased goods of plff.—which the clerk of plff. without directions, charged to S. alone. It was proved that S. and defd. at the time were in partnership in buying and selling goods—no evidence was given to shew that the goods were not purchased on account of the firm—Held, that there was no evidence on which to predicate an instruction, "that if the goods were sold to S. individually and not on the credit of the firm, then defd. was not liable." Held that defd. was liable if the goods were purchased by S.—and defd. was a partner at the time—and the goods went into the partnership fund.*

2. *Notice was given to take depositions on the 14th July—to be continued if necessary from day to day until completed—The depositions of two witnesses were taken, commenced on the 14th, and continued from day to day until the 16th July, when they were completed—Held, that as the depositions for any thing appearing on their face might have been taken in an hour—something must also appear to justify the delay—and unless something did so appear they ought to be suppressed—what was done each day should appear on the record.*

ERROR to St. Louis circuit court.

The opinion of the court delivered by TOMPKINS, J.

March commenced his action in the circuit where he obtained a judgment against Bracken; Bracken now prosecutes his writ of error to reverse that judgment. On the trial of the cause Lyman B. Shaw a witness produced by the plaintiff testified that in December 1830, March the plaintiff had a store in St. Louis, and that the witness was then a clerk in it doing business for said March, and that on 21st day of said month, March introduced one Thomas L. Shaw to witness, saying that said Thomas wished to purchase goods and he directed the witness to sell him as many as he wanted. The witness on that day sold Thomas L. Shaw goods to the amount of $167 57, Thomas L. continued in St. Louis several days and made on different days other smaller purchases from the witness. On the 4th day of March next following, that is, in the year 1831 the said Thomas L. came again to St. Louis, and bought other goods of the plaintiff from the same witness still acting as clerk for the plaintiff, the witness delivered all the goods aforesaid to said Thomas, and made all the entries in the books except one, charging the goods to Thomas L. Shaw. At the time the witness sold and charged the goods he did not know said Thomas had a partner. The plaintiff was not present and did not direct how the entries should be made. Rule, another witness produced by the plaintiff said that in the fall of 1830 Charles Bracken the defendant, and said Thomas L. Shaw came to St. Louis together, and that

One S. purchased goods of plff—which the clerk of plff. without directions, charged to S. alone. It was proved that S. and defd. at the time were in partnership in buying and selling goods —no evidence was given to shew that the goods were not purchased on account of the firm—Held, that there was no evidence on which to predicate an instruction, "that if the goods were sold to S. individually and not on the credit of the firm, then defd. was not liable."— Held that defd. was liable if the goods were purchased by S.—& defd. was a partner at the time— and the goods went into the partnership fund.

Bracken then told him he was in partnership in selling goods with said Thomas at Naples, Illinois, that they purchased goods from witness, and that they were charged to Thomas L. Shaw and company by the directions of Bracken. A notice of the dissolution of the partnership of Thomas L. Shaw & Co. was then proved by the plaintiff signed by the defendant Bracken and by T. L. Shaw dated June 9th 1831. Some depositions were then produced, and being objected to by the defendant were permitted to be read. By them further evidence of the partnership between Bracken & Shaw was furnished; by them also it appeared that goods were purchased at St. Louis in the winter of the year 1831, and brought to their store by Shaw and sold for the benefit of Shaw & Co. Notice was given that these depositions would be taken by plaintiff on the 14th July 1831, and that if necessary the taking would be continued from day to day till the same was completed. From the certificate of the officer who took the depositions we learn that *the examination* of one of the witnesses *was reduced to writing* and subscribed by the deponent in *presence* of the officer *on the 16th day of July* 1834 *&c. The said deposition having been commenced on the 14th day of July* 1834, *the taking thereof having been commenced and the taking thereof adjourned from day to day until this day*, i. e. 16th July. The officer then certifies that both the witnesses were examined in pursuance of the commission and notice at the place and time appointed, and were *there* by him sworn and examined and their examination reduced to writing and subscribed by them respectively in his presence, and that the taking of said depositions was commenced on the 14th day of July 1834, and continued from day to day till the same was completed. It was objected that the depositions were not taken in pursuance of notice, and the objection being overruled the opinion of the court so overruling this objection was excepted to. After the evidence was closed, the counsel of the defendant prayed the court to instruct the Jury that if they should be of opinion from the testimony that the plaintiff sold the goods to Thomas L. Shaw individually, and not on the credit of the firm of Shaw & Bracken they ought to find for the defendant. The court refused to give this instruction, and told the jury that if they were of opinion from the testimony, first, that Thomas L. Shaw purchased said merchandize; secondly, that at the date of the purchase the defendant was the partner of the purchaser, Shaw; and thirdly, that the goods went into the partnership fund, the defendant

was liable. The opinion of the court in refusing the instruction asked was excepted to. After the verdict was found by the jury, the counsel moved the court to grant a new trial, because, 1st, the verdict was without evidence. 2nd, the court refused the instruction asked by the defendant. 3rd, the court misdirected the jury, 4th, the court allowed incompetent testimony to go to the jury. 5th, the court suffered the depositions to be read to the jury which had not been taken according to law. The motion for a new trial was overruled. It is assigned for error. 1st, that the court misdirected the jury. 2nd, that the court did not give the instructions prayed for by the defendant. 3rd, that the court permitted improper evidence to go to the jury. 4th, that the court refused a new trial. 1st, ought the circuit court to have given the instruction asked. 2nd, did that court err in instructing the jury. 3rd, did the court err in permitting the depositions to be read in evidence. The defendant it will be recollected prayed the court to instruct the jury that if they were of opinion from the testimony that the plaintiff sold the goods to Thomas L. Shaw individually, and not on the credit of the firm of Shaw & Bracken they ought to find for the defendant. No abstract proposition can be more true than this, that if the credit were given to Shaw individually and not to the firm of Shaw & Bracken, then the jury should find for the defendant. No testimony of a negative character was given, and the defendant seems to have no evidence on which he can found a claim to such an instruction as he asked. The instruction given by the court was very correct and embraced every thing that the defendant had a right in our opinion to ask. For it is very plain that if the goods purchased of March in the winter of 1830, and in the spring of the next year were carried to their store in Illinois and sold for the use of the firm, that the firm ought to pay for them unless the defendant Bracken would produce evidence *to show himself exempt.* Dormant partners, even, are liable when discovered. See Collyer on partnership p. 212. In refusing the instruction asked, and in giving that objected to by defendant, then, we think the circuit court committed no error. The objection to the reading of the depositions seems to be well founded. We have on the record the depositions of two witnesses so short that for any thing appearing on the record they might have been taken in one hour, and without any reason appearing the time is protracted during three days. The officer simply tells us that the ex-

JUNE TERM 1835.

Bracken
v.
March

Notice was given to take depositions on the 14th July—to be continued if necessary from day to day until completed—

JUNE TERM
1835.

The depositions of two witnesses were taken, commenced on the 14th and continued from day to day until the 16th July, when they were completed —Held, that as the depositions for any thing appearing on their face might have been taken in an hour—something must also appear to justify the delay—& unless something did so appear they ought to be suppressed—what was done each day should appear on the record.

amination was begun on the fourteenth and completed on the sixteenth day of July. It is manifest that, by such a mode of proceeding, the opposite party might be so harassed as to make it very oppressive to attend to the taking of depositions. We have a right to see how the plaintiff has conducted the examination in order to be able to decide whether the defendant were unnessarily hindered and delayed. The officer in our opinion should have kept a journal so as to show what was done on each day. If it should happen that there were more writing required than could be conveniently done in one day that would be a good cause for continuing the examination till the next day. If on the other hand a witness in attendance became sick and unable to attend till the next day, or if one duly summoned had failed to attend, either might be a good reason for an adjournment till the next day, and the statement of such facts on the journal would perhaps be very good evidence of the necessity. But in the present case we have nothing to show us why the reducing of the testimony of these two witnesses to writing was protracted for so long a time. We are therefore led to the conclusion that they were not taken in conformity with the notice, and that the circuit court erred in permitting them to be read to the jury, and for this reason its judgment is reversed—the cause will be remanded.