A. P. KELLY *et al.* v. BENJAMIN F. MARTIN.

TAKING DEPOSITION—*Adjournment by Notary, When not Error.* Where the notice to take a deposition specifies "that the taking will be adjourned from day to day," it is not error for the notary before whom the deposition is taken to adjourn the taking of the deposition from day to day, at the instance of the attorney for the party giving the notice, where neither the opposing party nor his attorney appears at any time before such notary public, and there is no contention that the adjournments were taken for the purpose of annoying the opposing party or preventing cross-examination, or causing any unnecessary expense or delay.

*Error from Finney District Court.*

ON the 2d of October, 1888, *Benjamin F. Martin* commenced his action against *A. P. Kelly* and *W. E. Kelly*, partners as the Prairie Lumber Company, before a justice of the peace of Garden City, in Finney county, to recover $45.60, for the monthly rent of $11.65 for lots 11 and 12, in block 38, in Garden City, under a lease alleged to have been executed on July 1, 1887, for the period of five years, for the lumber company by one D. B. Ellis. Upon the trial, the plaintiff recovered the full amount of his claim. The defendants appealed to the district court, and on December 16, 1889, the plaintiff filed a supplemental petition, claiming an additional $165.10, being the alleged amount of rent due on the lots since the commencement of the action. Trial had on the 9th of June, 1890, before the court, without a jury. The court made the following findings of fact:

"1. The defendants, A. P. and W. E. Kelly, were partners doing business under the name of the Prairie Lumber Company on the 1st day of July, 1887. On that day one D. B. Ellis, acting for said company, entered into a contract or lease with the plaintiff, B. F. Martin, for the space of time intervening between the 1st day of July, 1887, and the 1st day of July, 1892, at the rate of $11.65 per month, payable in advance, for the property described in the lease, which is made a portion of the bill of particulars in the case.

"2. The defendants, in compliance with the conditions of

the lease, paid the rent until the 1st day of July, 1888, according to the conditions of the lease.

"3. D. B. Ellis was not authorized by the defendants in the case to contract with the plaintiff for the lease of the premises for any time whatever.

"4. The lease was executed in the presence of F. B. Gifford, and with his knowledge and consent.

"5. F. B. Gifford was the legally authorized agent of the partners of the Prairie company, for the purpose of transacting such business as the executing of a lease to the premises for the use of the company for the transaction of their business as a lumber company.

"6. The defendants have failed to comply with the conditions of the lease since the 1st day of July, 1888, and have refused to pay for the use of the premises, according to the terms of the contract."

And thereon the court made and filed the following conclusions of law:

"1. A. P. and W. E. Kelly have ratified the contract of the lease by entering upon its performance and paying for the use of the property for the space of one year from the execution thereof.

"2. A. P. and W. E. Kelly, as the Prairie Lumber Company, are bound to comply with the conditions of this lease, because of the fact that it was executed in the presence of and with the consent of F. B. Gifford, its authorized agent for the purpose of transacting business of that character, and if the said agent exceeded his authority in executing the lease for more than the space of one year, defendants in the case must recover whatever damages they suffer from it from him.

"3. The defendants are liable to B. F. Martin upon this contract of lease under the original bill of particulars, and the supplemental bill in the sum of $210.70, with whatever interest has properly accrued upon these amounts."

To the findings of fact and the conclusions of law the defendants excepted. Subsequently they filed a motion for a new trial, upon the ground, among others, "of error of law occurring at the trial and excepted to by the defendants." This motion was overruled. Judgment was entered for $210.70, with interest, in accordance with the findings of

fact and the conclusions of law, to which the defendants excepted, and bring the case here.

*Milton Brown*, for plaintiffs in error:

The court suppressed the deposition of F. B. Gifford, over the objections and exceptions of the defendants, and this was erroneous. The scope of the authority of Gifford was simply to contract for one year for this particular piece of ground. He was not engaged in indiscriminately leasing ground for the defendants. The particular line of his business was that of manager of the lumber yard, which was not a permanent thing, but a temporary business vocation, and therefore the line of Gifford's authority was limited. Again, under the evidence, it is not shown that Gifford knew of the contents of this lease, or had any knowledge of it being for more than one year, or that he was present when it was executed. No knowledge is traced to Gifford, none to the Kellys; and even if Gifford had known it, how could his knowledge bind the Kellys, unless they knew of it? See *National Bank v. Drake*, 29 Kas. 311.

The defendants cannot be held liable on account of the alleged proposition that Gifford assented to the execution of this lease, because, first, it is not proven that Gifford knew of it, but, on the contrary, the evidence of the plaintiff rebuts the very assumption; and, second, because Gifford was an agent to sell lumber, and not to indiscriminately lease land; and even if he had exceeded his authority (and the testimony fails to establish that Gifford knew the contents of the five-year lease), no loss is shown to have accrued to Martin, and no knowledge is proven upon the part of the defendants; third, and if, in violation of the testimony, we would even admit that Gifford knew of it as a fact (which we deny), the law is not that the Kellys have thereby lost the right to set up as a defense "no authority," and are restricted to an action against Gifford for damages.

This court, in *Babb v. Aldrich*, 45 Kas. 218, decided that

a party cannot split his cause of action into several causes of action in order to give a justice of the peace jurisdiction.

*A. J. Hoskinson,* for defendant in error:

There was no error in suppressing the deposition of Gifford. The deposition is not properly in the record; it is only shown to have been filed by the justice with the papers in the case. The presumptions are that the ruling was right. It had been suppressed by the justice. The deposition of Gifford that appears in the papers was not taken at the time and place fixed in the notice, and no legal reason for the adjournment is shown.

*National Bank v. Drake,* 29 Kas. 311, was a case of an agent dealing with himself, and not with a third party. In the case at bar, Gifford was the general manager of the business, and acted for the defendants, and his act in taking possession of the lots was, in law, the act of the defendants. It certainly was within the scope of his authority to procure a place on which to do the business of the defendants, and they must know what he was doing, if acting within the apparent scope of his authority. He moved the lumber yard to the plaintiff's lots, by virtue of authority of the lease, and the defendants are bound by it. They cannot enjoy the benefits of the lease for one year, and then repudiate it, to the injury of the plaintiff. Gifford knew the lease was for five years, and held it for the defendants. The business ceased to be profitable at the end of the first year, and this seems to be the first time the defendants discovered the want of authority to make the lease. The defendants concede the authority to make the lease for one year; he leased the lots for five years, and in pursuance of this lease took possession.

The opinion of the court was delivered by

HORTON, C. J.: It is alleged that the court erred in suppressing the deposition of F. B. Gifford, a material witness for the defendants below. The case was continued from time to time, and set for trial on the 29th of May, 1890, but not

called for trial until June 9, at 2:55 o'clock P. M. Thereupon the plaintiff below filed a motion to suppress the deposition. The court took up and heard the motion before the introduction of any evidence, and sustained the same. Exceptions were taken. The trial then proceeded, before the judge without a jury.

It is insisted that the deposition was properly suppressed, because the justice of the peace, when the action was pending before him, had suppressed the deposition, and, also, because it was not taken at the time and place fixed in the notice, and no legal reason for the adjournments is shown. The written notice to take the deposition specified that it would "be taken at the office of David P. Howard, in the city of Denver (910 Sixteenth street), in the county of Arapahoe, in the state of Colorado, on Wednesday, the 7th day of November, 1888, between the hours of 8 A. M. and 6 P. M., and that the taking of the same would be adjourned from day to day, between the same hours, until the deposition was completed." It appears that the notary public was present at the time and place named in the notice for taking the deposition. The attorney for the defendants appeared, but no one appeared for the plaintiff below. The attorney for the defendants below requested the notary public to adjourn the taking of the deposition until the next day; and on the next day the defendants again appeared by their attorney, and the deposition was adjourned to the 9th. Adjournments were taken from day to day thereafter, at the instance of the attorney for the defendants, until the 14th day of November, 1888. The deposition was then taken. No one appeared then, or at any other time, for the plaintiff.

The statute provides: "The examination may, if so stated in the notice, be adjourned from day to day." The notice given stated that "the taking will be adjourned from day to day." It was decided in *Babb v. Aldrich*, 45 Kas. 218, that where a deposition shows that the notary public adjourned at the request of the attorney of the party taking the deposition, a sufficient reason for the adjournment is shown. If an

attorney had appeared for the plaintiffs below at the time and place of taking the deposition and objected to an adjournment, probably the deposition or certificate of the notary ought to have shown affirmatively more fully the reasons for the several adjournments, but a notary has the power to adjourn from day to day at the request of the attorney taking the deposition. Such an adjournment cannot be had for the purpose of annoying the opposing party or his attorney, or of causing unnecessary expense or delay. It is not claimed or shown that any injustice to any party was done by the adjournments, or that the plaintiff was prevented thereby from being present to see the manner of proceeding by the party, the officer, and the witness, or was deprived of the benefit of cross-examination. Had the notice prescribed that there would be no adjournment in the taking of the deposition, unless necessary, and nothing was said in the deposition about the attorney of the party being present at the time of the adjournments from day to day, a stricter rule would prevail.

The ruling of the justice of the peace to suppress the deposition was not conclusive upon the appeal. In such a case, the excepting party has the right to the opinion of the district court as to the notice and the sufficiency of the deposition. The trial court found, in this case, that D. B. Ellis, who signed the written lease for the Prairie Lumber Company, had no authority so to do; but ruled that, the lease having been executed in the presence of F. B. Gifford, the general agent or manager of the Prairie Lumber Company, and with his knowledge and consent, the company was liable for the rent during the lifetime of the lease. If the Kellys, who carried on business in the name of the Prairie Lumber Company, were nonresidents and out of the state, and F. B. Gifford was their general agent or manager at Garden City, having full authority to transact and carry on all their business at that city, then a lease executed in his presence and with his knowledge and consent, and accepted by him, would bind his principals. In the deposition which was suppressed, Gifford testified that he "was absent from Garden City when

25—53 KAS.

the lease was signed, and never saw the lease." His deposition further shows that he supposed the lease was to be for one year only, with the privilege of five years. If, as testified to upon the trial, Gifford was present when the lease was written, and had it in his hands and handed the same to Ellis, directing him to make a copy for the plaintiff, then the copy was properly received in evidence to connect Gifford with the lease, and to show that he had full knowledge thereof, and consented to the same.

A party cannot split up his cause of action into several causes of action, in order to give a justice of the peace jurisdiction; but, in an action upon a lease to recover rent, a cause of action accrues when any part of the rent is due or unpaid. The judgment of the district court will be reversed, and the cause remanded.

All the Justices concurring.