# In the Matter of FRANCIS X. GREEN.

**St. Louis Court of Appeals, June 11, 1907.**

(Opinion by Bland, P. J.)

1. DEPOSITIONS: Jurisdiction of Officer Taking Depositions. Notice to take depositions must state the place, the day and the hours on which they will be taken, and to authorize the reading of such depositions it must appear from the return of the officer taking them that they were taken in pursuance of the notice.

2. ———: Contempt: Refusal to Answer Questions. Where a witness, subpoenaed to appear before a commissioner authorized to take depositions, declared that he would not answer any questions which might be put to him, and no questions were asked of him, such declaration was not a refusal to answer proper questions and he was not in contempt so as to authorize a commitment.

(Concurring Opinion by Nortoni, J.)

3. ———: Continuances: Jurisdiction of Officer Taking Depositions. Where a party fails to appear at the taking of depositions of which he is duly notified and continuances thereof are had, the record of the officer should show the cause for such continuances and it is for the court on review to determine whether the cause assigned for a continuance was sufficient or not.

4. ———: ———: ———. Where the taking of depositions was continued and the reason assigned by the officer was "there being no witnesses present," this was insufficient to authorize a continuance in the absence of a showing of any diligence to subpoena witnesses for that day, and the officer was therefore without jurisdiction to commit for contempt a witness who refused to answer questions on the day to which the adjournment was had.

5. ———: Contempt: Refusaal to Answer Questions. Where a witness subpoenaed before a commissioner authorized to take depositions declared he would not answer any questions put to him, this was insufficient, when no questions were asked of him, to authorize his commitment because it does not appear that he would have been asked a proper question or that he would have continued in that intention if a proper question had been asked him.

In the Matter of Green.

(Dissenting Opinion by Goode, J.)

6. ———: **Continuances: Jurisdiction of Officer Taking Depositions.** Where the record of a commissioner authorized to take depositions showed that there was a continuance of the taking of such depositions because there were no witnesses present, and where it appeared that the party taking depositions was duly diligent in the attempt, but failed, to procure the attendance of witnesses, the continuance was authorized and the officer had jurisdiction to take depositions on the day to which the same were continued.

7. ———: **Contempt: Refusal to Answer Questions.** Where a witness properly subpoenaed before a commissioner authorized to take his deposition, declared that he would not answer any question on the ground that the depositions were closed and not on account of any personal privilege, and there was no pretense that he would have answered a proper question, he was in contempt and could be committed, although no question was actually asked him, under sections 2897 and 4658, Revised Statutes of 1899.

## Original Proceeding, Petition for Habeas Corpus.

PETITIONER DISCHARGED.

*Kinealy & Kinealy* for petitioner.

(1) It is the law in this State that when a commissioner or a notary makes an illegal adjournment his power to take depositions ceases. In re Green, 86 Mo. App. 223. (2) The continuance on May 9 not appearing by the record of Mr. McQuillin assuming to be a commissioner, to be necessary owing to any facts in the case was void. Bracken v. March, 4 Mo. 74. Adjournments must be taken in good faith and for a sufficient reason which should appear in the record of the proceedings. 13 Cyc. 923.

*Daniel Dillon, Thomas H. Sprinkle* and *R. S. Shackelford* for respondent.

Mr. Green having announced in the beginning that he would refuse to answer any further questions under

advice of counsel and after having been given an opportunity as set out in the record above referred to, he continued to refuse to further testify. Under this situation we did not think it necessary to ask any question, as we had already been told by Mr. Green that he would refuse to testify. The law does not require impossible things to be done and as the petitioner had stated under advice of counsel he would not answer, we did not see that anything would be gained by putting questions to him. When he stated that he would refuse to answer any further questions, in our opinion, he was in contempt. Ex parte McKee, 18 Mo. 599; Ex parte Mumford, 57 Mo. 603; Ex parte Livingston, 12 Mo. App. 80.

BLAND, P. J.—The petitioner stands committed to jail for contempt, by virtue of a commitment issued by a commissioner appointed by the circuit court of the city of St. Louis to take depositions in a cause pending in said circuit court. The contempt is alleged to have been committed by the petitioner refusing to answer any questions that might be put to him as a witness before the commissioner. The commissioner's journal shows the following facts: That the taking of the depositions had been in progress for a number of days and the petitioner's deposition had been taken; that the plaintiff in the case, at whose instance and on whose notice the depositions were being taken, on May 8, 1907, notified the opposite party that he had examined all the witnesses he desired to examine, with the exception of a Mrs. Green, on whom he had failed to get service, and asked that the taking of the depositions be continued to the following day for the purpose of affording him an opportunity to make another effort to secure the attendance of Mrs. Green. The continuance was agreed to and the taking of depositions was continued to the following day. Mrs. Green was not served with the subpoena issued for her, and on May 9, in the ab-

sence of defendant or his counsel, the taking of the depositions was adjourned to the following day. The minutes of the commissioner show there were no witnesses present on the ninth and he adjourned the taking of testimony to Friday, May 10. On May 10 the journal shows counsel for plaintiff being present, no counsel appearing for defendant, witness John G. Joyce, who was subpoenaed by plaintiff, not knowing anything about the facts in the case, was excused, and no other witnesses being present, the taking of depositions was adjourned to Saturday, May 11, after which time the taking of depositions progressed to May 14, when the petitioner was brought in by the sheriff under an attachment issued by the commissioner, and the following took place:

"Witness: I came up to see what you wanted with me; on the last day, I understood you were through with me.

"Counsel for plaintiff: Have you communicated with Mr. Kline or Mr. Kinealy, that you were summoned here this morning?

"Witness: Yes.

"The Commissioner: They know that you are to be here this morning?

"Witness: Yes.

"Counsel for plaintiff: Of course, if you desire to notify your attorneys and want them here, we will wait until you do so. If you don't want to, we will go on. If you don't we won't keep you very long. You can do just as you please about that.

"Witness: Well, Mr. Commissioner, I have been advised that these depositions were closed; so that being the case, I will have to decline to answer any further questions.

"The Commissioner: You were advised by your attorneys?

"Witness: Yes.

In the Matter of Green.

"The Commissioner: Mr. Kinealy?

"Witness: Well, by my attorneys.

"The Commissioner: When you were present here the other day, you were asked certain questions, and it appeared at that time that the counsel for plaintiff was not through with you, but stated in the presence of all present —

"Counsel for plaintiff (Judge Dillon): I think, in fairness to the witness, I think we stated at that time that we were through with the witness, but the depositions were not closed. It was distinctly understood that the depositions were laid over until another day. But afterwards, we found certain questions we wanted to ask the witness. There seems to be no question but what we have a right to resummon him. I think we did say at that time to Mr. Green that we were through with him—that is my impression of it; but the further taking of depositions was laid over, and in looking over the testimony, there are a few other questions we want to ask the witness, and we concluded to have him resummoned, and question him further, and that is the situation this morning.

"Counsel for plaintiff (Mr. Sprinkle): Would you like to call up your counsel —

"Counsel for plaintiff (Mr. Dillon): No; he has been advised by his attorneys, I suppose, not to answer.

"The Commissioner: Do you wish to call up Mr. Kinealy or Judge Klein, to ask them if they want to be here?

"Counsel for plaintiff (Judge Dillon): I think not; the witness said he has come here after consultation with them; and he don't intend to answer any more questions. We have been going over that testimony, Mr. Sprinkle and myself, and find some questions that we would like to have him answer; that is the situation.

"The Commissioner: You stated that your counsel wouldn't be here?

"Witness: Well, I simply said that I am advised that the depositions have been closed.

"The Commissioner: Have you been advised not to answer any further questions?

"Witness: I decline to answer any further questions.

"The Commissioner: Have you been advised to that effect?

"The Witness: Yes, sir.

"Counsel for plaintiff (Judge Dillon): That being so, what is the reason for asking any questions at all. The witness says he declines to answer any questions to be put to him. I submit that that being so, the witness be committed for refusal to submit to further questions.

"The Commissioner: Wait a moment Mr. Green; I say just wait a moment. Do you want to put any questions to him?

"Counsel for plaintiff (Judge Dillon): I think it is useless to put any questions. When the witness states he is under advice of counsel not to answer, and is under the impression that the taking of these depositions is closed, by advice of counsel, he has come here determined to answer no questions that may be put to him.

"The Commissioner: That is your position Mr. Green?

"The Witness: Yes, sir.

"The Commissioner: You won't submit to any examination at all?

"The witness: No, sir; I understand the depositions are closed.

"The Commissioner: Well, I think that you have been laboring under a misapprehension, and that being the case, I think under the law, you ought to be compelled to answer the questions; they are all proper questions, and if you decline to do it. we will have to let the law take its course.

"Counsel for plaintiff (Mr. Sprinkle) : Now, he has declined to answer any questions. Just sit down Mr. Green. We are not going to put you to any unnecessary delay. Now in order to make the record clear, wouldn't it be best for us to put one question Judge, and if he refuses —

"Counsel for plaintiff (Judge Dillon, interrupting) : I think when the witness says he won't submit to any examination at all, that that follows, and we ask that the witness—

"The Commissioner: I think that that is all the law requires.

"Counsel for plaintiff (Judge Dillon, continuing) : And I ask for the commitment of the witness, for refusal to further answer any of the questions that may be put to him."

Thereupon the commissioner sustained the motion of counsel for plaintiff for a commitment and adjudged the witness stand committed for contempt in refusing to answer any further questions that might be put to him.

The petitioner contends that the commitment and his imprisonment thereunder is illegal for two reasons: First, because the adjournment of the taking of depositions from May 9 to May 10 and from the tenth to the eleventh were without any cause, were unauthorized; and that the authority of the commissioner to take depositions terminated on May 9, and he was therefore without jurisdiction to commit the petitioner for contempt; and second, that as no question was propounded to the petitioner as a witness, he was not guilty of contempt in refusing to answer a proper question.

In Ex parte Krieger, 7 Mo. App. 367, it is said, "There is no such thing known to the law as contempt of a notary public;" that the Legislature has clothed a notary with authority, in the exercise of the function to take depositions, to commit a witness who refuses

to give evidence which may be lawfully required of him; and held: "In a proceeding under the Habeas Corpus Act to bring up a prisoner charged with contempt in refusing to answer interrogatories propounded before a notary public taking depositions, there is no presumption of jurisdiction in favor of the notary, and no adjudication as to the jurisdictional fact which the court is bound to respect; and it is the duty of the court to examine whether the commitment is within the intent of the Legislature, and within the meaning and spirit as well as the letter of the law."

In Bracken v. March, 4 Mo. 74, "Notice was given to take depositions on July 14—to be continued if necessary from day to day until completed. The depositions of two witnesses were taken, commenced on the fourteenth and continued from day to day until July 16, when they were completed. Held, that as the depositions for anything appearing on their face might have been taken in an hour—something must also appear to justify the delay—and unless something did so appear they ought to be suppressed—what was done each day should appear on the record." At page 77, the court said: "The officer in our opinion should have kept a journal so as to show what was done on each day. If it should happen that there was more writing required than could be conveniently done in one day that would be a good cause for continuing the examination till the next day. If on the other hand a witness in attendance became sick and unable to attend till the next day, or if one duly summoned had failed to attend, either might be a good reason for an adjournment till the next day, and the statement of such facts on the journal would perhaps be very good evidence of the necessity. But in the present case we have nothing to show us why the reducing of the testimony of these two witnesses to writing was protracted for so long a time. We are therefore led to the conclusion that they

were not taken in conformity with the notice, and that the circuit court erred in permitting them to be read to the jury, and for this reason its judgment is reversed —the cause will be remanded."

In Owens v. Peyton, 70 Mo. App. 50, it was ruled: "Where the other party does not appear to the taking of depositions, proceedings should begin on the day named in the notice; and, if adjournments occur, entries should be made each day of the proceedings of that day together with the adjournment."

Notice to take depositions must state the place, the day and between what hours of the day depositions will be taken, and that if not completed on that day, the taking will continue at the same place and between the same hours from day to day until completed; and to authorize the reading of the depositions, it must appear from the return of the officer taking them that they were taken in pursuance of the notice. If for any reason the taking is adjourned to the following day, the cause for the adjournment should be noted by the officer taking the deposition. The authority of the commissioner to take the depositions can only be exercised in pursuance of the notice served by the plaintiff upon the defendant of the time and place of their taking, and it seems to me that any unauthorized adjournment would be a departure from the terms of the notice, and have the effect of ousting the jurisdiction of the commissioner to proceed further in the taking of depositions and that his authority to take them could only be restored by the service of a new notice. But waiving the question of the jurisdiction of the commissioner to take depositions on the fourteenth of May, I think the petitioner is entitled to his discharge, on the ground that it affirmatively appears from the journal of the commissioner that the petitioner was not guilty of contempt in refusing to answer any question that was propounded to him as a witness. His declaration that he would not answer

In the Matter of Green.

any question was nothing more than an expression of a declared purpose to commit a criminal contempt rather than submit to a further examination as a witness before the commissioner. It is not the law that a citizen may be imprisoned as for the commission of a crime on his naked declaration that he will commit it rather than submit to the authority of an officer. Communicated intent to commit a crime is not a crime. Bishop says, to constitute a criminal offense, "some act must have followed the unlawful thought;" and adds by way of illustration, "It is no offense at the common law to have in one's possession counterfeit coin, or forged paper, . . . with the intent to pass them as good, . . . because the bare possession is not an act." [1 Bishop on Criminal Law, sec. 204.] The declaration by the petitioner of his intent not to answer any questions that might be propounded to him as a witness before the commissioner, was not an act, was not a refusal to answer a proper question, and hence was not a contempt for which the commissioner had any authority to commit him, and I think the petitioner is entitled to his discharge. *Goode, J.,* dissents, *Nortoni, J.,* concurs.

NORTONI, J. (concurring).—It appears that on May 8, counsel for both parties being present, a continuance of the taking of depositions was had by consent of all concerned until 11 o'clock, a. m. on May 9, 1907. Thus far there is no room for controversy. The record with respect to the continuance had on May 9, is as follows: "Now on this Thursday, May 9, A. D. 1907, at 11 o'clock a. m. pursuant to adjournment as hereinbefore stated, the following proceedings were had: present, Judge Dillon and Mr. Sprinkle for plaintiff and no counsel appearing for defendant and there being no witnesses present, the commissioner adjourned a fur-

ther taking of testimony in this cause to Friday, May 11, 1907, at 11 a. m. at the same place."

Now while there are authorities to the effect that no rule of practice requires the notary or other officer before whom the depositions are being taken, to note the reason for making the adjournment (see King v. State ex rel., etc., 15 Ind. 64; May v. Russell, 1 T. B. Monroe (Ky.) 225) the authorities in this State, as in some other jurisdictions, seem to contemplate such reasons shall be noted by the officer and preserved in the record to the end that the court may review the matter and determine the sufficiency or insufficiency of the reasons for prolonging the proceeding, if the question, perchance, shall arise for determination. If I understand the doctrine in this State and have been able to deduce the same accurately from the adjudicated cases, the rule is where the adverse party fails to appear at the taking of the depositions and continuances thereof are had, the record should show what was done on each day and the cause for continuance or adjournment. [Fox v. Carlysle, 3 Mo. 197; Bracken v. March, 4 Mo. 74; Owens v. Peyton, 70 Mo. App. 50; In re Chas. Green, 86 Mo. App. 216; Bowman v. Branson, 111 Mo. 343-349, 19 S. W. 634; Kiskaddon v. Grant, 1 Kan. 328; Kelly v. Martin, 53 Kan. 380; 13 Cyc. 923; 9 Am. and Eng. Ency. Law (2 Ed.), 339.] And it is for the court on review to determine whether the cause assigned was sufficient or insufficient in that behalf, as was done in a case in which the officers return noted as follows: "The taking of these depositions has been adjourned from the ninth of March from day to day by reason of bad weather," which was adjudged by the Kansas City Court of Appeals to be an insufficient reason for the several adjournments. [Owen v. Peyton, 70 Mo. App. 50.]

In Bracken v. March, 4 Mo. 74-77, our Supreme Court intimated that if a witness had been subpoenaed and failed to appear in response thereto, such would no

doubt be a sufficient reason for an adjournment, and it was said: "The statement of such fact on the journal would perhaps be very good evidence of the necessity." I understand that the journal referred to is a proper record made up by the notary or commissioner of his official acts in and about the exercise of the authority in that behalf, and in this case, the only record or journal kept by the commissioner pertaining to the adjournment and the reasons therefor is the order of continuance heretofore quoted.

In Bowman v. Branson, 111 Mo. 343-349, it was adjudged that the commissioner's return should show affirmatively the depositions were not completed and for that reason the adjournment was had, in order to validate the proceeding, subsequent to adjournment, the opposite party not appearing. Now while it appears in the order of the commissioner in this case that the adjournment was had for the reason no witness was present, it does not appear therein that any witness was subpoenaed for that day or otherwise required to be present, nor does it appear that any depositions had been taken on that day, nor that the depositions were not completed, and for that reason the adjournment was had. Of course the mere fact that no witness was present was no cause for adjournment unless one had been subpoenaed and further, the mere fact that a witness, although subpoenaed, was not present, was no reason for adjournment, unless the depositions were not completed. The facts that the witness was subpoenaed and did not attend, or that the depositions were not completed, must be affirmatively shown in the order of adjournment as reasons therefor. I am of the opinion, in view of the decided cases referred to, that the reason assigned in the order of adjournment therefor is insufficient to continue the authority of the commissioner after the meeting on May 9.

2. In view of the fact that no questions were pro-

pounded, I am persuaded the mere general statement by the witness that on advice of counsel, he would answer no questions, was insufficient to place him in contempt, for it is certain there are questions of a character he could not be required to answer—matters of privilege —such questions as the answer to which would tend to incriminate him, etc. [In re Green, 86 Mo. App. 216; State ex rel. v. Simmons Hardware Co., 109 Mo. 118, 18 S. W. 1125.] And indeed the statute (sec. 2897) through which the commissioner derives his authority to punish for contempt, provides as follows: "Any person summoned as a witness in virtue of the provisions of this chapter, and attending, who shall refuse to give evidence which may lawfully be required to be given by him, on oath or affirmation, may be committed," etc. The language employed only authorizes a commitment when the witness refuses to give evidence that "may lawfully be required," and until the question is first propounded and its character ascertained to be one legitimate and proper, I am quite convinced it would be not only contrary to fundamental principle in administering the law in restraint of personal liberty, as suggested by Judge BLAND, but highly unjust as well, to incarcerate a witness as for crime, for having asserted that he would not answer, when in truth the question itself, when propounded, may be one to which neither the commissioner nor the court could force him to respond. Now while it is said to be a principle of almost, if not quite, universal application, that the law does not require the doing of a useless act, and that according to the witness' statement it would have been useless to have propounded the question, we must also remember that in proceedings, penal in their nature as this one is, when it is sought to restrain a citizen of his liberty, the principle requiring strict procedure, influences the case to the extreme measure of its application, and all

presumptions are indulged in favor of the accused and against the party affirming the right in restraint of the liberty of the citizen. In view of this principle, we cannot presume, even though the witness announces his intention to answer no questions, that he would continue of that mind after the question was propounded, for to do so would be to convict him of an offense by indulging the presumption first, that a proper question would be propounded, and second that he would continue in that obstinate state of mind after such proper question had been propounded. It might be that he would answer proper questions, notwithstanding his declaration to the contrary. At any rate, he ought not to be committed for not doing so, at least until the question is presented squarely and its propriety or impropriety disclosed.

I concur in discharging the petitioner.


GOODE, J. (dissenting).—The evidence taken on the hearing of this cause convinced me beyond a doubt that the taking of depositions in the cause of Ackerman v. Green was adjourned by the commissioner from day to day because of the impossibility of procuring the attendance of certain witnesses whom the plaintiff's counsel desired to examine. These adjournments were in good faith and not intended to harass or oppress the defendant or the witnesses. A subpoena was issued for Mrs. Green, but she could not be found. Another witness by the name of Joyce was subpoenaed, but it turned out that his brother was the person wanted. There was neither lack of diligence nor any wrong motive shown on the part of the plaintiff or his counsel. The conduct of the commissioner and his notations of the adjournments were sufficient, in my judgment, to keep in force the notice for the taking of depositions, even as against the defendant in the cause. Some strictness has been imposed by the decisions on the continu-

In the Matter of Green.

ance of depositions from day to day, in order to prevent the party taking them from unduly annoying the opposite party, and now and then depositions have been suppressed because the notary or commissioner did not recite any good reason for a continuance to another day, or because the notice to take did not provide for a continuance if the depositions were not completed on the day named. The commissioner's recitals in the present case show each continuance of which complaint is made was to procure the attendance of witnesses whose testimony was desired by the plaintiff, and that subpoenaes were issued for those witnesses was shown at the hearing of this petition. Mrs. Green had been absent from St. Louis and her counsel disclaimed knowledge of whether or not she had returned, but suggested that counsel for the plaintiff might try to get her by a subpoena. Thereupon they issued a subpoena for her and the taking of depositions was adjourned to await service of it. While waiting, counsel for plaintiff thought of some more questions they wished to ask the petitioner, who had been previously examined. They issued a subpoena for him which he disobeyed and on being brought in by attachment, took the position that the right to take depositions had expired and refused to testify. The subpoena for Mrs. Green was issued May 8, and the taking of depositions continued until May 9. On the latter day, the subpoena was returned "not found." Thereupon subpoenas for the petitioner, Francis X. Green and two other witnesses were requested and issued and the taking adjourned to May 10. "There being no witnesses" present, the commissioner recited. On May 10, it appeared that only one of these witnesses for whom a subpoena had been issued, was served. This witness was John G. Joyce, who turned out to be ignorant of the cause, having been subpoenaed by mistake when his brother was wanted. Thereupon the commissioner recited, "there being no other witness present

and counsel for defendant not being present, the commissioner adjourned the further taking of these depositions to Saturday, May 11, A. D. 1907, at 11 o'clock a. m. at the same place." On Saturday, F. X. Green (the petitioner) failed to appear though he had been subpoenaed. The commissioner's record recites that an attachment for him, returnable Monday, May 13, was issued and "thereupon the commissioner adjourned the further proceedings in the case to Monday, May 13, A. D. 1907, at 11 o'clock at the same place." The record recites that on Monday, the witness Green had not yet been procured by attachment and counsel, for the plaintiff requested the commissioner to issue an attachment for him to have him brought in on Tuesday, May 14. This was done and "thereupon the commissioner adjourned the further proceedings in the case to Tuesday, May 14, A. D. 1907, at 11 o'clock at the same place." It appears that about all the delay there was, may be traced to the petitioner's conduct and the impossibility of serving a subpoena on his mother.

Adjournments under such circumstances would not be ground to suppress depositions, but are valid under our decisions which are the strictest on the subject of continuing depositions that I have found. The good faith and even the necessity of the continuances are apparent; and these are all the facts the law requires for the jurisdiction of the officer to remain intact. [Bowman v. Branson, 111 Mo. 343, 19 S. W. 634.] The purpose of insisting on good cause for the continuance of the taking of depositions from day to day is, as said, to prevent the party not taking from further attendance than is necessary, in reason, to complete the testimony. Now it seems to me to be outside the reason of the case to say a witness may look over the continuances from day to day and if he finds one was for insufficient cause, and that the opposite party did not thereafter appear, may refuse to testify. If the notary

or commissioner's jurisdiction was entirely lost, the witness might take advantage of the fact, but I am firmly of the opinion that this had not occurred in the present instance.

I think no stress should be laid on the omission to propound a question to the witness. He had announced positively that the depositions were closed; that he was acting under the advice of counsel and would refuse to answer any question or give any testimony. He reiterated his determination several times and gave reasons for it having no relevancy to his personal privilege to refuse to answer interrogatories which might incriminate him. The contempt of the witness was his refusal to testify. This is made so by the express words of the statutes. [R. S. 1899, secs. 2897 and 4658.] Moreover there was no pretense at the hearing that the petitioner would have answered proper questions, but a contention that he had the right to refuse to answer any.

For these reasons, I think he should be remanded into the custody of the sheriff.