BOWMAN v. BRANSON, *Appellant.*

Division One, July 2, 1892.

1. **Practice**: DEPOSITIONS, EXCEPTIONS TO: RULE OF COURT. Under a rule of court requiring exceptions to depositions to be filed two days before the cause is set for trial, exceptions filed two days before the case is finally set for trial are in time, although the cause was set for trial on a prior day at which no trial was had.

2. ———: DEPOSITIONS, ADJOURN. ...T OF TAKING. A motion to suppress depositions because taken at a later date than that named in the notice is properly sustained where it does not affirmatively appear that the continuance was had in good faith.

3. Contract: FAILURE TO EXECUTE NOTES: MEASURE OF DAMAGES. In an action for breach of contract in failing to execute and deliver certain notes, the measure of damages is the face value of the notes with interest in conformity with their tenor up to time of trial, although the notes if made as agreed on would not have been due at the time of the trial.

4. ———: SEVERAL STIPULATIONS: PARTY. One may sue separately on stipulations in a contract made solely for his own benefit, although it also contains stipulations in favor of a third person.

5. ———: CONSIDERATION: EVIDENCE. Where in such action the defendant received the consideration agreed to be given him, representations made by the plaintiff as to his expenses in procuring such consideration are immaterial.

*Appeal from St. Louis City Circuit Court.*—HON. G. W. LUBKE, Judge.

AFFIRMED.

*G. H. Shields* and *J. S. Dobyns* for appellant.

(1) The last two notes (of $496.55 each) sued on falling due after suit was brought, as to them, plaintiff was not entitled to recover. (2) The contract between the parties is joint, not several; neither Bowman nor Richey could sue alone, and the court should have so instructed the jury. *Clark v. Cable*, 21 Mo. 223; *Denney v. Covey*, 60 Mo. 224; *Robbins v. Ayres*, 10 Mo. 538; *Wells v. Gatey*, 9 Mo. 565. (3) The court erred in refusing to give defendant's instruction offered at the close of plaintiff's case that plaintiff could not recover, having proved a different contract from the one sued on. (4) The contract between the parties was that defendant should make plaintiff whole for his time and money expended, and this issue

should have been properly submitted to the jury. (5) The court erred in excluding defendant's evidence offered to show the circumstances under which defendant was obliged to buy the contract, the false representations of plaintiff as to his solvency, that his services and those of Richey were of no value, that plaintiff had not expended $1,239.65, and had been reimbursed in the sum of $875 received from the Hot Springs Company. (6) The court erred in instructing the jury to find for plaintiff on defendant's counterclaim of $3,500. (7) The court erred in instructing the jury that, if the defendant knew "during the negotiation of the contract" that the $1,000 was due, he could not be allowed to recoup this sum, because there was no evidence that such knowledge came to him until after the agreement had been made. (8) The court erred in suppressing the New York depositions. *Chapman v. Spicer*, 10 Mo. 689; *Cator v. Collins*, 2 Mo. 225; *Fox v. Carlisle*, 3 Mo. 198; *Bracken v. March*, 4 Mo. 74.

*Frank E. Richey* for respondent.

(1) The suit was properly brought by plaintiff. A contract though in form joint, if it creates a several interest, will give a several right of action. *Cross v. Williams*, 72 Mo. 580. (2) The court committed no error on the matter of instructions. (3) The court did not err in suppressing depositions. *Holman v. Bachus*, 73 Mo. 49.

BRACE, J.—This is an action upon a contract in which the plaintiff recovered judgment, and defendant appeals.

I. The suit was instituted in the circuit court on the fourteenth of September, 1887, and was tried on an amended petition, filed January 3, 1888. It appears

from the bill of exceptions that, in pursuance of notice served upon the plaintiff on the thirteenth of December, 1877, the defendant commenced taking depositions under a *dedimus* from said court before a commissioner of Missouri, in the City of New York, at the time and place mentioned in said notice, on the ninth of January, 1888; that no person appeared for the plaintiff, and Mr. J. S. Dobyns appeared on behalf of the defendant; that on the twelfth of January the following action was had by said commissioner:

"Pursuant to adjournment, as above stated, on the twelfth day of January, 1888, between the hours of eight o'clock in the forenoon and six o'clock in the afternoon, at the office of the Consolidated Refrigerating Company aforesaid, the parties met, and on account of the illness of counsel for defense, and his inability to be in attendance on account thereof, I adjourn the taking of said depositions till to-morrow, January 13, 1888, at twelve o'clock A. M., then to be continued at the same place and between the same hours mentioned in the annexed notice."

In pursuance of said adjournment the commissioner, on the thirteenth of January, 1888, continued the taking of said depositions until completed. On the twenty-seventh of January, 1888, the depositions taken in New York were received, opened and filed in the office of the clerk of said court.

The case was set for trial in room number 5 of the circuit court on the twenty-third of February, 1888, and on the same day, on application of defendant, was transferred to courtroom number 1, and was then set for trial on the twenty-third day of April, 1888.

On the twentieth of April, 1888, the plaintiff filed his motion excepting to all that portion of said depositions taken on and after the twelfth of January, 1888, and asked to have the same suppressed for the reason

Bowman v. Branson.

that the plaintiff had no notice of the taking of the same, and the same were not taken in conformity with the commission and notice given to plaintiff therefor who was not present at such taking, either in person or by attorney, and the commissioner had no power to take said depositions in manner and form as taken. This motion, coming on to be heard on the nineteenth of May, 1888, was sustained, the depositions suppressed, and the plaintiff excepted.

The following rules were in force in said court when these proceedings were had:

"Rule 3. All exceptions to depositions, except for incompetency and irrelevancy, shall be considered waived unless filed within two term days after notice of the filing of such deposition has been served on the opposite party or his attorney; and, if no such notice shall have been given, such exceptions must be filed at least two days before the cause is set for trial; but if the cause is set for trial on the first, second or third day of the term, or the deposition is filed within two days of the day of trial, such exceptions shall be made and determined before the trial is begun."

"Rule 21. Any cause pending in one courtroom may be transferred to another, provided the judge of the latter room consents thereto by an order entered of record, or by order of the general term, and not otherwise, except upon a statutory change of venue. When any transfer of the cause already set for hearing is. made, the same shall be docketed for trial in the room to which it is transferred (as near as may be) on the day of such former setting."

On the twenty-third of May, 1888, the defendant filed his motion asking the court to set aside its said order suppressing said depositions, for the reason that said motion therefor came too late, and said order was improvidently made, in that, the taking of said deposi-

tions on the thirteenth of January, in pursuance of said adjournment, was regular according to law. This motion was overruled on the twenty-sixth of June, 1888, and the defendant excepted.

The case came on for trial on the eighteenth of October, 1888, and in the course of the trial the defendant offered to read said depositions in evidence—objected to by plaintiff—the objection sustained, and the defendant excepted.

The defendant, in his motion to set aside the order of May 19, suppressing the depositions, alleged that the attorney of record for the plaintiff had read said depositions before the first of February, 1888, but there was no evidence introduced to prove that fact, nor is there any evidence that notice was given of the filing of said depositions as required by the rule; so that the point that the motion to suppress came too late rests solely upon the fact that, although when the motion was made on the twentieth of April the case was set for trial on the twenty-third, yet the case having been previously set for trial on the twenty-third of February, and the motion not having been made two days before the first setting, exceptions thereto were waived.

We think such a construction is too narrow and technical, and while within the letter is not within the spirit of the rule; which seems to be that exceptions shall be filed before the trial of the cause within the time provided in the rule, in order that the court may have time to consider and determine them before the trial is begun; and when filed at least two days before the case is set, at which a trial can be actually had, the motion is in time when no notice of the filing has been given, although the case may have been previously set, but no trial had; the opposite party can always precipitate the motion, or a waiver, by notice.

The depositions are not before us in this record.

From the bill of exceptions it only appears that they were commenced on the ninth, and what was done by the commissioner on the twelfth, as stated. The depositions that were taken and suppressed seem to have been actually taken on the thirteenth. What was done by the commissioner on the tenth and eleventh does not appear in this record. The notice was to take said depositions "on the ninth day of January, 1888, between the hours of eight o'clock in the forenoon and six o'clock in the afternoon of that day, and that said depositions, if not completed on that day, to be continued from day to day at the same place until completed."

In order to comply with this notice, it must have affirmatively appeared upon their face (the opposite party not appearing), that the taking of the depositions was begun in good faith on the ninth, that the taking was not completed on that day, and for that reason was continued to the next day, was resumed but not completed on that day, and was continued to the next, and so on until the thirteenth, in order to entitle the depositions taken on the latter day to be read in evidence. Such a taking not so appearing in this record, we cannot see that the court in suppressing the depositions committed error, indulging the usual presumption (in the absence of proof to the contrary) that the trial court acted correctly.

II. In order to properly appreciate the rulings of the court, it is necessary to set out the pleadings and the instructions under which the issues were submitted to the jury in this case. They are as follows:

Petition:

"Now at this day comes plaintiff, and, by leave of court first had, files this his amended petition, and for cause of action against the defendant states that, on or

prior to the twenty-ninth day of June, 1887, the Automatic Refrigerating Construction Company was a corporation organized and existing under the laws of the state of Missouri; that prior thereto it had acquired, and was then the owner of, certain and valuable and exclusive rights, privileges and franchises connected with the use of the patented processes of refrigeration owned by the Consolidated Refrigerating Company and protected by letters patent from the United States government, the ownership of which exclusive rights, uses, privileges and franchises was evidenced by a certain contract in writing, of date February 5, 1887, in which the said Consolidated Refrigerating Company is the grantor, and a copy of which is hereto attached and made a part hereof, the original thereof being now in the possession and under the exclusive control of the defendant; that the defendant had full knowledge of all the facts and circumstances connected with, and of the terms of, the said contract; that he was president of the St. Louis Automatic Refrigerating · Company, a corporation which was using the same processes at St. Louis, Missouri, under a similar contract with the said Consolidated Refrigerating Company, and had full knowledge of the value of said contract, and being desirous of securing the said contract, and the rights thereby conferred, the defendant did, on the twenty-ninth day of June, 1887, agree and contract with the plaintiff that in consideration of the plaintiff securing from the said Automatic Refrigerating Construction Company a transfer to the defendant of said contract, and the transfer to the defendant of two hundred and eighty shares of the capital stock of the Hot Springs Automatic Refrigerating Company of the par value of $7,000, the transfer to the defendant of certain blank books and other small property, and of the plaintiff's causing the capital stock of the said Automatic

Refrigerating Construction Company to be canceled, and a resolution to be entered upon the records of said company dissolving said corporation, he, the said defendant, would pay to the plaintiff the sum of $500 in cash, and would execute and deliver to him, the plaintiff, his, the defendant's, certain negotiable promissory notes as follows: One for $750, payable thirty days after date; one for $496.55, payable sixty days after date; one for $496.55, payable ninety days after date; and one for $496.55, payable one hundred and twenty days after date; all to bear interest at the rate of eight per cent. per annum, and all to be dated and delivered on the twenty-ninth day of June, 1887, and would cause the said Consolidated Refrigerating Company to execute and deliver to the plaintiff its certain written obligation to pay to the plaintiff the sum of $875; said payment to be made whenever the Hot Springs Automatic Refrigerating Company shall make certain payments to the Consolidated Refrigerating Company; that in pursuance of said contract and agreement between the plaintiff and defendant, and in consideration of the matters and things therein agreed to be done and performed by the said defendant, as herein set forth, and of the payment by the defendant to the plaintiff of the sum of $500 in cash, the said plaintiff caused to be transferred and delivered to the defendant the said contract with the said Consolidated Refrigerating Company, of the date of February 5, 1887; and caused to be transferred and delivered to the defendant the said two hundred and eighty shares of the capital stock of the Hot Springs Automatic Refrigerating Company, of the par value of $7,000; and caused to be transferred and delivered to him the said blank books and other property; and caused the capital stock of the said Automatic Refrigerating Construction Company to be canceled, and a resolution dissolving

the said corporation to be entered upon its books; and fully and completely performed his part of the said agreement; that in part performance of his part of the said agreement the said defendant caused to be delivered to the plaintiff the said written contingent obligation of the said Consolidated Refrigerating Company to pay this plaintiff the sum of $875, and paid to the plaintiff the said sum of $500 in cash, as agreed; but that the defendant has refused, and still refuses, to make, execute and deliver to plaintiff either or any of the said promissory notes, in accordance with the provisions of the said contract, or to pay plaintiff the amount thereof or the interest accrued thereon, although demanded to do so by plaintiff to plaintiff's damage in the sum of $2,500.

"Wherefore plaintiff prays for judgment against defendant for the said sum of $2,500, together with his costs in this behalf expended."

Defendant's answer:

"Now, at this day, comes defendant herein, and by way of answer to plaintiff's amended petition herein, leave of court being had to file the same, denies each and every averment in plaintiff's petition.

"The defendant by way of further defense herein avers that, prior to the twenty-ninth day of June, 1887, plaintiff, for himself and one Fuller and one Richey had secured from the Consolidated Refrigerating Company of New York a contract to manufacture, use and sublet certain patented articles belonging to said Consolidated Refrigerating Company (known as the parent company) in the states of Arkansas and Texas, and other territory, but not in the state of Missouri; that the defendant and others had secured from said parent company a contract for the manufacture, use and subletting of said patented articles in the city of St. Louis and contiguous territory; that said plaintiff and said

Richey and Fuller, in order to introduce said patented articles in accordance with their said contract, organized in the city of St. Louis a corporation known as the Automatic Refrigerating Construction Company, and assigned their said contract to it, and also organized a corporation for the introduction and use of said articles in Arkansas, known as the Hot Springs Automatic Refrigerating Company; that defendant, in order to introduce said manufactured articles in accordance with his contract with said parent company, organized in the city of St. Louis a corporation known as the St. Louis Automatic Refrigerating Company, and the defendant at that time had induced a large number of persons to contribute capital, and had put in capital of his own for the purpose of developing said business; that, afterwards, to-wit, on or about the twenty-eighth day of May, 1887, said plaintiff and said Richey began to denounce the said parent company and their patents as a failure and a swindle, and threatened to sue said Consolidated Refrigerating Company for damages in large sums, on account of alleged misrepresentations of said company as to the value of said patented articles, and the plaintiff and said Richey, knowing the defendant's interests were closely connected with said parent company, and that defendant was struggling to make his own business a success, notified defendant of their intention to sue said parent company unless an immediate settlement of their said claims was made, and requested defendant to use his influence to bring about a settlement of matters in controversy between plaintiff and Richey and said parent company. This defendant, believing that said suits, if brought, would greatly injure the prospects of the St. Louis Refrigerating Company, in which he and his friends were largely interested, the business of which was then in

an undeveloped condition; and fearing that if said suits should be brought it would inevitably and irretrievably ruin him and said St. Louis Refrigerating Company by causing capitalists to withdraw therefrom, defendant, in order to protect his said interests at the solicitation of said plaintiff, agreed with him and with said Richey, who was then and there jointly interested in said contract, and jointly associated with said plaintiff as a stockholder and director in said companies, that if said plaintiff and said Richey would not bring said suits, and he and said Richey would deliver to said defendant two hundred and eighty shares of the capital stock of the Hot Springs Automatic Refrigerating Company, and cause to be transferred to this defendant by said Automatic Construction Company the contract between the Consolidated Refrigerating Company and the said plaintiff and the said Fuller and said Richey, then held by the said Automatic Refrigerating Construction Company, and would cause to be surrendered and canceled the capital stock of the said Automatic Refrigerating Construction Company, and cause to be entered on the books of the said construction company a formal resolution of dissolution passed by its board of directors and stockholders, that defendant would make the plaintiff and said Richey whole for whatever sums they had expended in and about said contract, and the organization of said companies, and would allow them for reasonable value of their services and loss of time in the premises at the rate of $300 per month for said plaintiff, and $100 per month for said Richey, aggregating the sum of $1,500 to be paid to said plaintiff, and $500 to said Richey, and in addition thereto the defendant would transfer to said Richey one hundred and twenty shares of said stock of the Hot Springs Automatic Refrigerating Company in payment of a claim then and there held by said Richey

against said companies for said services in organizing the same; that said plaintiff and said Richey then and there falsely represented that the plaintiff was solvent and worth $40,000, and that the services aforesaid, for which the plaintiff and said Richey were to receive said sums of $2,000, had been and would be of great value to this defendant in said enterprises in this, among other things, that they had favorably interested numerous wealthy business men and capitalists in the towns of Hot Springs, Little Rock and Fort Smith, Arkansas, and Dallas and Fort Worth, Texas, in said enterprises, who were pledged to immediate investment of the necessary capital to introduce said patented articles so soon as the parent company should be ready to supply the same to each or either of said places, and that the plaintiff and said Richey further falsely represented that they had expended the sum of $1,239.65 in cash in said enterprises, and also falsely represented that they had paid to said parent company in New York all that was due it on account of said contract, and falsely represented that the same was clear of any incumbrance or charges thereon.

"That defendant, upon this basis, and relying upon these false representations of said plaintiff and said Richey, as to the value of their said services, and the amounts of money and time so spent by them, and that the plaintiff was solvent and worth $40,000, was induced to enter into the said contracts with said plaintiff and said Richey, and did then and there pay over to A. M. Berry, a member of the firm of Berry & Richey, the sum of $500, to be delivered to said plaintiff when said plaintiff and said Richey complied with the contract on their part, and defendant also agreed to give to said plaintiff, when said plaintiff and said Richey complied with the contract on their part, his non-negotiable notes dated June 29, 1887, for

$750, due in thirty days, $496.55, due in sixty days, and $496.55, due in ninety days, and $496.55, due in one hundred and twenty days, and also to deliver to plaintiff the contingent obligation of the Consolidated Refrigerating Company of New York for $875, payable when it should receive the same from the Hot Springs Automatic Refrigerating Company, and also to deliver to said Richey one hundred and twenty shares of the stock of said Hot Springs Automatic Refrigerating Company.

"Defendant further says that the said plaintiff and the said Richey did convey to him two hundred and eighty shares of the capital stock of the Hot Springs Automatic Refrigerating Company, and did as stockholders and directors cause the Automatic Refrigerating Construction Company to cancel its capital stock and to be entered upon the books of said construction company a formal resolution of dissolution passed by its board of directors, and also caused said company to transfer to defendant its interest in the contract dated February 25, 1887, between said plaintiff and said Fuller and said Richey and the Consolidated Refrigerating Company of New York; that, thereupon, this defendant directed said Berry to pay the sum of $500 to the said plaintiff, and also delivered to plaintiff the said contingent obligation of the Consolidated Refrigerating Company of New York for $875, and also transferred to said Richey one hundred and twenty shares of the capital stock of the Hot Springs Automatic Refrigerating Company, and also tendered to plaintiff the said non-negotiable promissory notes, agreed by him to be given as above stated, and in all respects complied with his said agreement with plaintiff and said Richey; that plaintiff and said Richey accepted and received the sum of $500 and the obligation of the parent company for $875 and the said one

hundred and twenty shares of stock, but declined to accept and receive the said notes, and threatened to sue defendant therefor.

"Defendant further says that the said plaintiff was not at the time of said representations solvent and worth $40,000, but on the contrary was insolvent, and that said contract of February 25, 1887, was not free and clear of all incumbrances, but on the contrary said plaintiff and said Richey owed to the Consolidated Refrigerating Company of New York on account of said contract the sum of $1,000 as a bonus therefor; that said plaintiff and said Richey had not expended the sum of $1,239.65 in and about the organization of said enterprises, but on the·contrary had not expended more than $500 on account thereof, and that plaintiff and said Richey had been reimbursed on account of said expenditures in the sum of $875, which they collected from the Hot Springs Automatic Refrigerating company, which fact was concealed from defendant; that the plaintiff and said Richey had not favorably interested numerous wealthy business men and capitalists in the towns of Hot Springs, Little Rock and Fort Smith, Arkansas, and Dallas and Fort Worth, Texas, in said enterprises, who were pledged to immediate investment of the necessary capital to introduce said patented articles as soon as the parent company should be ready to supply the same, but on the contrary they had interested no capitalists or wealthy business men in said enterprises, and the previous actions of said plaintiff in regard thereto, instead of being of value to defendant, greatly hindered and delayed him in his endeavors to push said enterprises under said contract; that this defendant was compelled to pay to said Consolidated Refrigerating Company of New York, in order to get the benefit of said contract, the said sum of $1,000, which plaintiff and Richey had agreed to pay

therefor, and that defendant was deprived of the benefit of the $875 so collected by plaintiff and said Richey from the Hot Springs Automatic Refrigerating Company, to which, under the contract, plaintiff was entitled.

"Defendant avers that by reason of the false representations of plaintiff and said Richey he is greatly damaged and has paid out and lost far more than he ever agreed to pay to plaintiff and said Richey for said contract and said stock, to-wit, the value of $3,500, and is under no obligation in law and equity to execute and deliver to plaintiff any promissory notes, non-negotiable or negotiable, or to pay any further sum on account of said contract, and asks that the same may be recouped and set off against plaintiff's and said Richey's alleged claims, and for general relief.

"And defendant, by way of further defense and for a counterclaim, herein avers that he is greatly damaged by reason of the said false and fraudulent representations of said plaintiff and said Richey, that plaintiff was solvent and worth $40,000 when in truth and in fact he was insolvent; that said contract was free of all incumbrance, when in truth and in fact said plaintiff and said Richey owed said Consolidated Refrigerating Company of New York $1,000 thereon as a bonus, which defendant was compelled to pay to the said refrigerating company of New York in order to get the benefit of said contract; and the further false and fraudulent representation that plaintiff and said Richey had expended the sum of $1,239.65 in and about the organization of said enterprise, when in fact they had not expended more than $500 on account thereof, and had been reimbursed in the sum of $875, which they had collected from the Hot Springs Automatic Refrigerating Company, and which fact they had concealed from defendant, and the further false and fraudulent representation that they

had interested numerous wealthy business men and capitalists in said enterprises in the towns of Hot Springs, Little Rock and Fort Smith, Arkansas, and Dallas and Fort Worth, Texas, who were pledged to immediate investment of the necessary capital to introduce said patented articles so soon as the parent company should be ready to supply the same to each or either of said places, when in truth they had not interested any capitalists therein who were pledged to immediate investment of money in said enterprises, by reason of which and by reason of other false and fraudulent representations of the plaintiff and said Richey, defendant was damaged in the sum of $3,500, for which he asks judgment."

The reply was a general denial of the new matter in the answer alleged.

Instructions for plaintiff:

"The jurors are instructed that if they believe and find from the evidence that on or about the twenty-ninth day of June, 1887, the plaintiff and the defendant entered into an agreement whereby the plaintiff was to cause to be transferred to the defendant the contract between the Consolidated Refrigerating Company of New York, on the one part, and Samuel A. Bowman for himself and for G. E. Fuller and Frank E. Richey on the other, of date February 5, 1887, and to procure said Automatic Refrigerating Construction Company to transfer to the defendant two hundred and eighty shares of the capital stock of the Hot Springs Automatic Refrigerating Company, together with certain blank books and other personal property, and to cause the capital stock of the said Automatic Refrigerating Construction Company to be canceled and a resolution to be entered upon the records of said company dissolving said corporation; and whereby the defendant was required, among other things, to execute and deliver

to plaintiff his four certain negotiable promissory notes, as follows: One for $750, payable thirty days after date, and three other notes, each for the sum of $496.55, payable in sixty, ninety and one hundred and twenty days after date, respectively, with interest from date at the rate of eight per cent. per annum, dated on the said twenty-ninth day of June, 1887; that, thereafter and in pursuance of said agreement, plaintiff did and performed the said several things specified above and required to be done by him under said agreement, and that the defendant failed or refused thereafter to execute and deliver to plaintiff said several notes, then the jurors should find a verdict for the plaintiff, and should assess his damages at the sum of $2,239.65, together with a sum equivalent to interest upon the sums of said several notes according to their terms, as follows, to-wit: On the $750 note at the rate of eight per cent. per annum from the twenty-eighth day of July, 1887, until this date, and on the sum of the remaining three notes at the said rate of eight per cent. per annum, from the said twenty-ninth day of June, 1887, until this date.''

"If, however, the jury find for defendant upon his claim of $1,000 set up by him in recoupment of plaintiff's demand, then the jury will reduce the finding for plaintiff accordingly."

"The court instructs the jury that if the defendant, during the negotiations of the contract between himself on the one part and Bowman and Richey on the other part, knew that the said Bowman had obligated himself to pay to the Consolidated Refrigerating Company of New York the sum of $1,000 in connection with the contract made by that company with Bowman for himself and for Richey and one Fuller, then defendant cannot be allowed to claim that he relied upon any representations of Bowman or Richey with respect to

such $1,000 claim or incumbrance, and you will find against him thereon."

"Upon the pleadings, the court instructs the jury that defendant cannot recover upon his counterclaim for $3,500."

"The fact that the contract mentioned in the petition and in the answer provided for paying $500 by the defendant to Frank E. Richey, and for transferring to him one hundred and twenty shares of the capital stock of the Hot Springs Automatic Refrigerating Company, will not prevent plaintiff from recovering in this action."

"Their act, even if proven to the satisfaction of the jury, that the plaintiff represented to defendant that he was solvent and worth $40,000, as alleged in the answer, does not constitute a defense to plaintiff's cause of action."

Instructions for defendant:

"If the jury believes from the evidence that the defendant Branson only agreed to give plaintiff his non-negotiable promissory notes in part payment for the transfer to him of the contract with the Consolidated Refrigerating Company of New York and tendered such notes to plaintiff, and he refused to receive them, then the plaintiff cannot recover in this action."

"The court instructs the jury that if the plaintiff or said Frank E. Richey represented that the contract with the Consolidated Refrigerating Company of New York had been paid for and was free from all claims due said company, and that the defendant relying on said representations entered into an agreement with them for the transfer of said contract to him, and the jury further believe that said contract had not been paid for and was not free from claims due said company, and that the defendant was compelled to relinquish to said Consolidated Refrigerating Company of

New York any franchise or property in order to obtain the benefits of said contract, then the defendant is entitled to have the value of said franchise or right deducted from the price agreed to be paid by him to said plaintiff and said Richey for the transfer of said contract."

The verdict of the jury was as follows:

"In this case the jury find a verdict upon the several issues submitted to them, as follows:

"*First.* Upon plaintiff's claim for $2,239.65 and interest, we find for plaintiff: Amount, $2,239.65; interest on same to date, $238.85, —total, $2,468.50

"*Second.* Upon defendant's claim for $1,000, set, up in recoupment, we find for plaintiff.

"*Third.* Upon defendant's counterclaim for $3,500, we find for plaintiff Bowman under the instructions of the court."

The errors complained of on the trial will be noticed in the order of assignment.

III.    Although the last two notes described in the petition and contract, amounting to the sum of $993.10, if they had been executed and delivered in accordance with the terms of the contract would not have become due when the suit was instituted, yet plaintiff's action being for a breach of contract in not delivering the notes, and not on the notes, his right of action accrued upon the non-delivery of the notes, according to the terms of the contract, and in the absence of any further proof as to their value at the time they were to be delivered, the measure of damages for such breach of the contract would be the face value of the notes, with interest according to their tenor at the time of trial. *Alexander v. Relfe*, 74 Mo. 495. There was no error in the instructions of the court authorizing a recovery for that amount.

IV. Although the consideration for the promises of the defendant in the contract, made between him and the plaintiff, moved in part from Richey, and plaintiff could not have performed his part of such contract without Richey's co-operation, yet the contract itself was in form and substance a contract with the plaintiff only. While it contained promises to him solely for the benefit of Richey, upon which Richey could sue alone, as was held in a suit by him on this same contract by the St. Louis court of appeals (*Richey v. Branson*, 33 Mo. App. 418), yet the promises to the plaintiff therein contained (and upon which he now sues) were to the plaintiff and for his benefit solely. Richey had no part or lot in them. The defendant was not by the terms of the contract obligated to plaintiff and Richey jointly in respect thereof, but to the plaintiff only, and for a failure to discharge those obligations is answerable to the plaintiff alone. *Richey v. Branson, supra; Cross v. Williams*, 72 Mo. 577. The obligation sued on and proven was a several obligation to plaintiff, and the court committed no error in refusing the instruction in the nature of a nonsuit on the ground that it was a joint one in favor of plaintiff and Richey.

V. The court committed no error in refusing to go into an inquiry as to the amount of money the plaintiff claimed on account of expenses. The specific agreement alleged in the petition, admitted in the answer and shown in the proof, was that for the consideration therein agreed to be given by the plaintiff, and which the defendant received, the defendant agreed among other things to pay $500 cash and $2,239.65 in promissory notes. The cash he paid. This suit is for a failure to deliver the notes. The defendant got exactly what he contracted for, and whatever may have been the actual amount of plaintiff's expenses, whether more or

less than he represented, they in no way affected the value of the property which formed the consideration for defendant's absolute and unconditional promise to pay the price agreed upon.

The same ruling in regard to the $875, for which the parent company was to and did execute its conditional due bill was, for the same reasons, obviously correct. There is no substantial evidence that we have been able to find in this record to sustain the allegation contained in the answer as to the representations that plaintiff was solvent and worth $40,000, and had favorably interested numerous wealthy capitalists in the enterprise, and the several matters contained in this paragraph having been properly eliminated from defendant's case as presented in the answer and the evidence, there was nothing left for his plea of recoupment and counterclaim for damages for false representations to rest upon, except the allegation that the contract transferred was incumbered by an unpaid "bonus" of $1,000.

VI. Upon the manner in which this issue was submitted to the jury the point is made "that the court erred in instructing the jury that if defendant knew" during the negotiation of the contract that the $1,000 was due he could not recoup this sum, because there was no evidence that such knowledge came to him until after the agreement had been made. This point is not well taken, in view of the following evidence contained in the deposition of J. Ensign Fuller, the gentleman who assented to the transfer of the contract for the parent company: "Q. At the time that you consented to the transfer of that contract from Bowman to Branson did you mention the fact to anybody that Bowman owed you $1,000, as a bonus for obtaining that contract? A. I think I did.

"*Q.* Why, then, did you consent to the transfer without requiring the payment of the $1,000? *A.* My recollection is that we agreed, Gen. Branson and myself, upon the terms of that transfer, if it was made.

"*Q.* To whom did you mention the fact, if to anybody, that Bowman owed you $1,000, on account of obtaining that contract. *A.* I think it was to Gen. Branson.

"*Q.* To anybody else? *A.* My brother was present.

"*Q.* Before the execution of the assignment of that contract? *A.* Yes, I think so."

The judgment in this case is for the right party, and, finding no error in the record calling for a reversal, it is affirmed. All concur.