Opinion by
Mr. Chief Justice Moore.
We refer to plaintiff in error as defendant or by name, ■and to defendant in error as plaintiff or by name.
The Custom Developing and Leasing Corporation, to which we refer here as the corporation, was formed in May of 1961 by Dr. T. J. Howard who owned 125 shares, G. Robert Howard who owned 124 shares, Livingston .Howard who owned 1 share, Roy Raemer who owned .125 shares, and W. D. Bradshaw who owned 125 shares.
*551 The purpose of the corporation was to purchase the old Atlantic Hotel Building in Tampa, Florida, and to remodel it and convert it into a modern office building. The building was purchased and the remodeling was completed in the summer of 1962 with the aid of permanent financing from Pilot Life Insurance Co. in Florida. The building was renamed the Howard Building and portions of it were leased to tenants. By the end of 1962 it became apparent to the above named stockholders that they were underfinanced and did not have sufficient capital to carry on their business project and put it on a profitable basis. They therefore decided to sell their stock in the corporation and the defendant became interested in purchasing all of the outstanding stock in the company. After a period of negotiation an option agreement was entered into between the defendant and the owners of the stock, under which she acquired the right to purchase their holdings. The option provided, inter alia:
“It is hereby agreed by and between all of the parties hereto that the party of the first part shall have the option- and privilege of purchasing said 375 shares of the common stock of said Corporation for a total purchase price not to exceed $60,000.00 to be paid by the promissory note of the party of the first part. Said promissory note shall bear interest at the rate of 7% per annum and shall be due and payable in annual installments over a period of fifteen years. Interest on said promissory note shall be paid annually from the date of said note, and the first payment of principal shall be due three years from the date of said note and annually thereafter, in equal annual installments during the term of said note.”
On or about May 24, 1963, the option agreement was extended for a period of ninety days. It was signed by all the parties and contained the following:
“It is hereby agreed by and between all of the parties hereto, that the party of the first part shall have the *552 option and privilege of purchasing the second parties’ Three Hundred Seventy Five (375) shares of the common stock of said Corporation for a total purchase price which shall not exceed Sixty Thousand ($60,000.00) dollars, the intention of the parties being to leave some area of negotiability in which due consideration shall be given to the amount of debts which the party of the first part assumes on behalf of the Corporation, the total amount of such debts being unknown at this time. * * * ” (Emphasis added.)
'During all of the time provided in the two options defendant was busily engaged in investigating the property of the corporation, its assets and liabilities. She personally inspected the property of the corporation; had the books inspected by auditors of her own choosing; and arranged for refinancing from a Building and Loan Association. She had obtained a loan of over $600,000, with a certain deadline for the making of that loan.
A meeting was held to close the transaction prior to expiration of the option period. At that meeting the stock certificate of T. J. Howard was endorsed in blank and placed in the hands of George Robert Howard to be turned over to the defendant upon settlement therefor as provided in the option. To satisfy the demands of the refinancing company, Ruth M. Veatch was required to have all the stock of the corporation delivered to her and registered in the books of the corporation in her name. The promissory notes contemplated by the option agreement were signed by the defendant and delivered to all the stockholders other than T. J. Howard.
There is ample evidence that the stock of plaintiff was delivered to defendant upon her promise that she would sign and deliver to him a similar note in the sum of $16,000 when they met later at Boulder, Colorado. This, she later refused to do, claiming that she was entitled to some adjustment. Plaintiff denied any agree *553 ment to make an adjustment or settle for less than the sum paid by defendant to the other stockholders.
On November 5, 1963, plaintiff filed suit alleging in a “First Claim for Relief” the delivery of the stock in question for an agreed price of $16,000. In a “Second Claim for Relief” he alleged that his attorney or his agent delivered the stock in question to defendant on the promise that she would deliver a note to him for $16,000 providing interest at 7% per annum, and that she failed to perform that promise.
Trial was to the court which found for the plaintiff and defendant now seeks to reverse the judgment on several alleged errors of the trial court.
It is claimed that the trial court erred in ruling that p aintiff proved there was an alleged price of $16,000, whereas the evidence in the view most favorable to the plaintiff proved only an agreement to give a note. We hold that damages for breach of contract to deliver a note are measured by the face value of the note and are recoverable immediately. Such is the indication of the opinion in Rogers v. Rogers, 96 Colo. 473, 44 P.2d 909. The action in that case was for damages for the conversion of a note and we there said:
“ * * * We hold, therefore, that in an action for damages for conversion of a note, a statement of its amount is a sufficient allegation of value to support the action.” There is no perceptible reason why the above measure of damages should not be applied where there is ample evidence to show that defendant had for a valuable consideration agreed to give a note in a certain amount and then refused to do so. There is abundant evidence that the note, as agreed upon, was to be for $16,000 plus interest until paid, and not for a note in a sum to be determined later, as contended by the defendant.
In Kennedy v. Hudson, 224 Ala. 17, 138 So. 282, it was held that where a contract is to deliver a note the measure of damage for breach, in absence of further *554 proof of value, is face value of the note with interest to date of judgment.
In Garsson v. American Diesel Engine Corporation, 310 Mass. 618, 39 N.E. 2d 566, it was held that in an action for failure to keep a promise to give a note the measure of damages would be the amount of the note. To the same effect are American Manufacturing Co. v. Klarquist, 47 Minn. 344, 50 N.W. 243; Deering v. Johnson, 86 Minn. 172, 90 N.W. 363; Wasser v. Western Land Securities Co., 97 Minn. 460, 107 N.W. 160; Bowman v. Branson, 111 Mo. 343, 19 S.W. 634; Caldwell v. Kuykendall, 94 Okla. 84, 221 P. 84; Allied Building Credits, Inc., v. Grogan Builders Supply Co., 365 S.W. 2d 692 (Tex.). In Allied, supra, the Court of Civil Appeals of Texas said:
“It has also been held that the measure of damages for breach of a contract to deliver notes is, in the absence of any further proof of the value of the notes, their face value.”
It is stated in 22 Am. Jur.2d Damages § 66:
“• * * * Other courts, however, hold that a breach of a contract to pay in securities converts the obligation into one to pay in money, and this seems to be the general rule where the promise is to pay in the promisor’s own bond or note.”
In the instant case defendant received the 125 shares of stock belonging to T. J. Howard. The stock certificate was transferred to her name on the books of the corporation. She cannot now change her contract unilaterally by asserting that she should be permitted to deliver a note in an amount less than that given for the certificates of others holding identical interests.
It is also contended that the trial court erred in denying defendant’s motion for a continuance. This contention is without merit. We see no abuse of discretion on the part of the trial court in this connection.
With reference to the refusal of the trial court to admit certain evidence offered by defendant, the record *555 clearly shows that defendant acted on the basis of her own investigations and upon the investigations of her agent, her attorney, and her auditors relating to alleged misrepresentations. The proof offered could not have changed the outcome of the case in any way.
The argument that the findings of the trial court are insufficient to sustain the judgment is without merit. At the conclusion of the trial, the court commented:
“ * * * have testimony that something is black and testimony that something is white. I can’t help but observe that someone is terribly mistaken or someone is certainly lying from the witness stand. There is no question about it. * * * ”
The judgment and decree of the court contains the following:
“FIRST: In Tampa, Florida, on or about June 26, 1963, defendant agreed with plaintiff, through plaintiff’s agent in Tampa, Florida, to pay to plaintiff the sum of $16,000.00 in the form of her promissory note (rate of interest and payment of principal to be as stated in that Option Extension Agreement by and between the parties dated May 24, 1963) to be delivered to plaintiff in Boulder, Colorado, upon plaintiff’s return to Boulder from New Mexico, in exchange for the transfer of ownership by the plaintiff of his one hundred twenty-five (125) shares of the capital stock of Custom Development and Leasing Corp., Inc., a Florida corporation, to the defendant.
“SECOND: In reliance upon said agreement as aforesaid, in paragraph FIRST, on or about June 27, 1963, plaintiff’s agent delivered plaintiff’s one hundred twenty-five (125) shares of stock in said corporation properly endorsed by the plaintiff to the defendant and thereby transferred ownership of said shares of stock to the defendant.
“THIRD: The defendant has breached her said agreement in that she has refused and has continued to refuse *556 to deliver her said promissory note in the amount of $16,000.00 to the plaintiff.
“FOURTH: By reason of defendant’s breach of her said agreement, plaintiff is damaged in the sum of $16,000.00.
“WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED BY THE COURT THAT:
“1. Plaintiff has judgment against the defendant for the sum of $16,000.00, and for the sum of $1,094.15 as interest thereon at the statutory rate of 6% per annum from June 27, 1963 to August. 17, 1964, and for the plaintiff’s costs in this matter. * * *”
These findings, amply supported by evidence, are sufficient. Lininger v. Lininger, 138 Colo. 338, 333 P.2d 625. All other matters complained of by defendant are without merit.
The judgment is affirmed.
Mr. Justice McWilliams and Mr. Justice Groves concur.