**WALTHER & CIE, Plaintiff,**

v.

**U. S. FIDELITY & GUARANTY COMPANY et al., Defendants.**

Civ. No. 72–259.

United States District Court,
M. D. Pennsylvania.

June 19, 1975.

Arthur R. Littleton, Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Robert J. Stewart, Liverant, Senft & Cohen, York, Pa., for defendant U. S. Fidelity & Guaranty Co.

Paul J. Donnelly, Philadelphia, Pa., for defendant Planet Ins. Co.

Donald H. Yost, Wogan, Elsesser, Yost & Bupp, York, Pa., for defendants R. S. Noonan, Inc. and International Noonan.

Lewis S. Kunkel, Jr., Pepper, Hamilton & Scheetz, Harrisburg, Pa., for defendants International Boiler Works Co. and International Environmental Systems, Inc.

SHERIDAN, Chief Judge.

This case is before the court on plaintiff's motion for sanctions against the defendants for failure to carry out the terms of the settlement agreement entered into by the parties.

Plaintiff, Walther & Cie, entered into a contract with International Boiler Works Company to furnish material, primarily boilers and boiler tubing, for use in the Harrisburg Incinerator project, being constructed by International-Noonan, a joint venture consisting of International Boiler Works Company and R. S. Noonan, Inc. The purchase price agreed to in the contract was 1.-280.140 Deutsche marks. U. S. Fidelity & Guaranty Company and Planet Insurance Company executed a payment bond in connection with the aforementioned project undertaken by the joint venturers. Plaintiff delivered the last substantial amount of material pursuant to the contractual terms in May of 1971. On September 20, 1971, Walther & Cie received partial payment of the purchase price in the amount of 100.000 Deutsche marks. No additional payments having been made to plaintiff, this suit was instituted upon the payment bond against U. S. Fidelity & Guaranty Company, Planet Insurance Company, International-Noonan, R. S. Noonan, Inc. and International Boiler Works Company. Plaintiff filed a motion for summary judgment which the court denied. Subsequently the case was listed for trial.

On the day fixed for trial, September 23, 1974, the parties settled under the following conditions: (1) plaintiff would receive $425,000.00, $50,000.00 to be paid immediately and the remainder to be secured by a promissory note signed by defendants R. S. Noonan, Inc. (hereinafter Noonan) and International Environmental Systems, Inc. (hereinafter IES), the successor to International Boiler Works Company (hereinafter IBW) in the amount of $375,000.00, without interest, payable December 31, 1974, at the Deutsche Bank in Cologne, Germany, said note to be delivered to plaintiff's counsel; (2) the fidelity company defendants—U. S. Fidelity & Guaranty Company (hereinafter U.S.F. & G.) and Planet Insurance Company (hereinafter Planet)—would guarantee the payment of said note unconditionally by letters directed to Walther & Cie (hereinafter plaintiff) in Germany, with copies to plaintiff's counsel in Philadelphia; and (3) if the aforementioned guarantees were not forthcoming, plaintiff would receive a letter of credit from one of Noonan's banks guaranteeing the promissory note. On October 7, 1974, the $50,000.00 payment was made to plaintiff. Due to internal disputes among the defendants, a promissory note with the appropriate guarantees was never delivered to the plaintiff. On December 20, 1974, plaintiff filed the motion for sanctions against the defendants for their failure to carry out the settlement terms. On December 27, 1974, Noonan presented a certified check in the amount of $375,000.00 to counsel for plaintiff, which check was stipulated before the court to be in full satisfaction of all claims except those arising from the delay in implementation of the aforementioned settlement.

In its motion for sanctions, plaintiff requests that it be awarded damages to pay the loss sustained due to the decline in the Deutsche mark/American dollar ratio on the international money market because of the failure of the defendants to deliver a negotiable promissory note with the appropriate guarantees by October 1, 1974, which plaintiff could have immediately discounted thereby avoiding the loss caused by the subsequent devaluation of the dollar vis-a-vis the mark. In opposing this request for damages defendants contend: (1) that the settlement agreement does not provide for a *negotiable* promissory note; (2) that there was no indication at the time of settlement that plaintiff desired to discount the note and that the settlement agreement does not call for a discountable note; (3) that the alleged damages caused by the fluctuation in the

mark/dollar ratio in the international money market were not reasonably foreseeable nor within the contemplation of the parties at the time the settlement agreement was entered into on September 23, 1974, and hence such damages cannot be recovered by the plaintiff; and (4) damages for breach of a contract to deliver a promissory note are to be measured by the face value of the note and this amount has been paid in full by the defendants. Plaintiff also requests in its motion for sanctions an award of costs and counsel fees incurred in enforcing the settlement agreement and in obtaining damages for the breach thereof. Defendants contend that there is no basis whatsoever for the recovery of costs and attorneys' fees in this action. The court held a hearing on the motion for sanctions at which evidence was adduced with respect to the issues raised by the motion.

The following is the complete settlement agreement entered into and put on the record by the parties:

"THE COURT: Counsel have informed me that this case has been settled and I will ask Mr. Littleton.

MR. LITTLETON: It is stipulated and agreed by counsel for all parties that the case is settled, together with the case of Walther & Cie versus the International Boiler Works, civil action 72–630, pending in this district by the payment of $50,000 now to the plaintiff and the—

THE COURT: Who will pay the money?

MR. LITTLETON: R. S. Noonan, Inc., will pay $50,000 to Walther & Cie and will give counsel for Walther & Cie a promissory note due December 31, 1974, in the amount of $375,000, without interest, executed by R. S. Noonan, Inc., and International Boiler Works.

MR. KUNKEL: It is now called International Environmental Systems, Inc., which is the successor to International Boiler Company.

MR. LITTLETON: This note will be guaranteed by the surety defendants, United States Fidelity & Guaranty Company, the insurance company or a letter of credit from the—from a bank based on the credit of R. S. Noonan, Inc., to Walther & Cie in the amount of $375,000, payable December 31, 1974, in the Dresden bank in Germany.

(Whereupon that concludes the stipulation.)"

Thus the present litigation arises out of the meaning to be given this ambiguous contract.

 A contract is to be enforced so as to give effect to the reasonable expectations created by the parties in entering into the bargain. Johnson v. Fenestra, Inc., 3 Cir. 1962, 305 F.2d 179. The court must determine the *mutual* intention of the parties. Wilson v. Homestead Valve Manufacturing Co., 3 Cir. 1954, 217 F.2d 792. If the court is convinced that the parties gave substantially different meanings to the words of the agreement, and it is not convinced that either one of them knew or had reason to know what the other meant or understood by the words, then there is no reason for choosing one interpretation rather than the other and there is no contract. 3 Corbin § 538, pp. 64–65. If, however, the court, after a careful consideration of the words of the agreement, *and* of all the tentative rules of interpretation based upon the experience of the courts and linguists, arrives at a definite meaning actually given by one party as the other parties had reason to know, it will not disregard this plain and definite meaning. 3 Corbin § 535, pp. 19–21.

 When the terms of an agreement have been embodied in a writing to which both parties have assented as the definite and complete statement thereof, parol evidence of antecedent agreements, negotiations, and understandings is not admissible for the purpose of varying or contradicting the contract so embodied.

Lefkowitz v. Hummel Furniture Co., 1956, 385 Pa. 244, 122 A.2d 802. However, the parol evidence rule does not bar consideration of extrinsic evidence to resolve ambiguities in an agreement. Bakery and Confectionary Workers International Union of America v. Great Atlantic and Pacific Tea Company, Inc., W.D.Pa.1973, 357 F.Supp. 1322. Where a contract is ambiguous, evidence of extrinsic circumstances may be received to show that the parties themselves adopted a permissible method of applying its terms to the subject matter. Lamar v. Granger, W.D.Pa.1951, 99 F.Supp. 17, 35. A contract is ambiguous if it is reasonably or fairly susceptible of different constructions. Lamar v. Granger, W.D.Pa.1951, 99 F.Supp. at 35. An ambiguity is said to exist when from a consideration of the entire instrument the meaning of the agreement is capable of more than one interpretation. *See* United Packinghouse Workers v. Maurer-Neuer, Inc., 10 Cir. 1959, 272 F.2d 647, 649. Thus consideration by the court of extrinsic evidence to resolve the ambiguities in the settlement agreement is proper. As stated by the court in Gerhart v. Henry Hisston and Sons, Inc., 3 Cir. 1961, 290 F.2d 778, 784:

"It is beyond dispute that Pennsylvania law governs the contract here and in Pennsylvania as elsewhere it is established that where a written instrument is ambiguous, either party may introduce oral evidence to resolve the ambiguity. Morgan v. Phillips, 1956, 385 Pa. 9, 122 A.2d 73 and cases cited therein; Zehnder v. Michaud, 8 Cir., 1944, 145 F.2d 713; Buchanan v. Swift, 7 Cir., 1942, 130 F.2d 483; Shipley v. Pittsburgh & L. E. R. Co., D.C.W.D.Pa.1949, 83 F.Supp. 722.

"In determining whether or not there is an ambiguity the whole contract must be considered and not an isolated part. Fraser Fund v. Fraser, 1944, 350 Pa. 553, 40 A.2d 22; Buchanan v. Swift, supra; Shipley v. Pittsburgh & L. E. R. Co., supra. A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different construction; it is not ambiguous if the court can determine the meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends. Whiting Stoker Co. v. Chicago Stoker Corporation, 7 Cir., 1948, 171 F.2d 248; Zehnder v. Michaud, supra. An ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning through indefiniteness of expression, or having a double meaning. Whiting Stoker Co. v. Chicago Stoker Corporation, supra. Before it can be said that no ambiguity exists, it must be concluded that the questioned words or language are capable of one interpretation. Such a conclusion must be determined from a consideration of the entire instrument and not from a single portion thereof. United States Trust Co. of New York v. Jones, 1953, 414 Ill. 265, 111 N.E.2d 144."

The first ambiguity in the settlement agreement which the court must resolve is whether the promissory note agreed upon was to be negotiable in form. The agreement itself is silent on this point. However, the subsequent conduct of Noonan and IES clearly indicates that they understood that they had agreed to provide a negotiable note. By letter dated September 27, 1974, counsel for Noonan, Planet and U.S.F. & G. acknowledged receipt of the *negotiable* note drafted by counsel for plaintiff and expressed his intention to have it executed promptly by Noonan and forwarded to counsel for IBW (now IES). By letter dated November 8, 1974, counsel for Noonan, Planet and U.S.F. & G. admitted that on or before October 3, 1974, Noonan had executed the *negotiable* promissory note that had been transmitted by counsel for plaintiff and that he had then forwarded the note to IBW for execution. By letter dated November 20, 1974, counsel for IES (successor to IBW) explained to plaintiff's counsel the

reasons for the delay in executing the *negotiable* promissory note which had been executed and forwarded by Noonana to IES and made no mention of the negotiability of the note as being a factor in the delay, thereby indicating IES had no objection to a negotiable note. Indeed the import of this letter is that IES would sign the negotiable note as soon as the appropriate assurances were forthcoming from its sureties and the internal differences between IES and Noonan, who had entered into a joint venture with IBW, IES's predecessor, were resolved. This course of dealing subsequent to the settlement agreement plainly indicates that the parties assumed that a negotiable promissory note had been agreed upon. It was only after receipt of the letter of plaintiff's counsel dated November 25, 1974—wherein defendants were informed of the damage that had occurred due to their failure to provide a negotiable promissory note, indeed their failure to provide any kind of note—that counsel for defendants objected to a negotiable note. Thus, by letter dated December 9, 1974, Noonan's counsel stated that a "slight alteration" in the note would be made to make it non-negotiable.

In view of this course of dealing among the parties subsequent to the settlement agreement, the court holds that the promissory note explicitly provided for in the agreement was understood by the parties at the time of the settlement to be a note negotiable in form. In addition, the court notes the general rule that absent a contrary provision in a contract, the term "note" used in a commercial setting ordinarily means a note negotiable in form. American Nat. Bank v. Marshall, 1927, 122 Kan. 793, 253 P. 214; Road Improvement Dist. No. 4 of Cleveland County v. Southern Trust Co., 1922, 152 Ark. 422, 239 S.W. 8. This general rule reinforces the court's holding that the parties agreed to the delivery of a negotiable promissory note in the amount of $375,000.00.

A second ambiguity in the settlement agreement is that it does not specify when the promissory note is to be delivered. The lack of a specific time element does not make the agreement unenforceable since it is a well-settled principle that where no time for performance is provided in the written agreement the law implies that it shall be done within a reasonable time depending upon the nature of the business. Field v. Golden Triangle Broadcasting, Inc., 1973, 451 Pa. 410, 305 A.2d 689; Lefkowitz v. Hummel Furniture Co., 1956, 385 Pa. 244, 122 A.2d 802; L. C. S. Colliery, Inc. v. Globe Coal Co., 1951, 369 Pa. 1, 84 A.2d 776.

The settlement agreement was entered into on September 23, 1974. The court holds that the note should have been presented to plaintiff's counsel by October 11, 1974. This time span constitutes a reasonable period for the delivery of a negotiable promissory note, with appropriate guarantees, as set forth in the settlement. The court rejects as wholly unsupported by the language of the agreement and as inconsistent with the parties' subsequent course of dealing the contention of the defendants that execution of a general release and waiver of lien agreement was to *precede* delivery of the note. The exchange of letters between counsel after the settlement indicates that there was no such condition precedent to the delivery of the note to plaintiff's counsel. The $50,000.00 cash payment in the form of a check for that amount payable to plaintiff signed by Noonan was sent on September 27, 1974, to plaintiff without any demand that a general release and waiver of lien agreement be executed *before* its receipt. Rather the letter dated September 27, 1974, which accompanied the $50,000.00 check simply states that the check is tendered with the understanding that a general release and waiver of lien agreement would be executed upon its presentation to plaintiff. Likewise the court finds wholly without merit the assertion that the

note was not due until plaintiff's counsel made a written demand for it. This contention is contrary to the plain meaning of the settlement agreement which includes no such condition precedent. This proposition is also refuted by the subsequent exchange of letters between the parties wherein the $50,000.00 cash payment was made without any written demand and promises were made in letters from the defendants that the note would be forthcoming as soon as practicable.

■ The court having decided that pursuant to the settlement agreement a negotiable promissory note with appropriate guarantees should have been delivered to plaintiff's counsel no later than October 11, 1974, it is apparent that defendants breached the agreement, for no such note was ever delivered. Thus the court now turns to the question of damages.

■ While the defendants never delivered any kind of note to the plaintiff, a certified check in the amount of $375,-000.00 was delivered to plaintiff's counsel on December 27, 1974. Therefore, defendants contend that plaintiff suffered no damage from the breach of the agreement because damages for breach of a contract to deliver a promissory note are to be measured by the face value of the note and this amount was paid in full before December 31, 1974— the due date of the note agreed upon in the settlement agreement. In support of this position defendants rely on Veatch v. Howard, 1968, 166 Colo. 549, 444 P.2d 865; Allied Building Credits, Inc. v. Grogan Builders Supply Co., Ct. of App. Tex.1963, 365 S.W.2d 692; Garsson v. American Diesel Engine Corporation, 1942, 310 Mass. 618, 39 N.E.2d 566, and Kennedy v. Hudson, 1931, 224 Ala. 17, 138 So. 282. These cases are inapposite with respect to the issue of damages presently before this court because the case *sub judice*, unlike any of the aforementioned cases or any other case brought to the court's attention, involves a *foreign* plaintiff promised a negotiable

promissory note payable in American dollars which plaintiff upon receipt thereof could have *discounted immediately*, thereby avoiding the devaluation of the American dollar vis-a-vis the German Deutsche mark that occurred between the date the plaintiff pursuant to the settlement agreement *should* have received the note and the date plaintiff in fact received a certified check.

■ The court, therefore, must apply the general rule that where a contract is breached without legal justification, the injured party is entitled to recover, absent contrary provisions in the contract, whatever damages he suffered, provided: (1) they were such as would naturally and ordinarily follow from the breach; (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract; and (3) they can be proved with reasonable certainty. Keystone Diesel Engine Company, Inc. v. Irwin, 1963, 411 Pa. 222, 224, 191 A.2d 376; Taylor v. Kaufhold, 1951, 368 Pa. 538, 84 A.2d 347; Adams v. Speckman, 1956, 385 Pa. 308, 122 A.2d 685; Raby, Inc. v. Ward-Meehan Co., 1918, 261 Pa. 468, 104 A. 750; Adams Express Co. v. Egbert, 1860, 36 Pa. 360; Restatement, Contracts, §§ 330, 331.

Given the common practice of discounting negotiable notes and the fact that plaintiff could have immediately discounted the negotiable promissory note provided for in the settlement agreement at the Deutsche Bank, Cologne, Germany (see testimony of Guener Loehnert, duly authorized representative of the Deutsche Bank of Germany who is stationed in New York, at the hearing held on January 22, 1975, on the motion for sanctions), the damages suffered by the plaintiff because of the change in the dollar/mark value are the type which would naturally and ordinarily flow from the breach of the settlement agreement *sub judice*. There is no doubt that the damages were reasonably foreseeable at the time of the settlement. The parties involved here have

broad experience in the financing of large projects and are familiar with common commercial practices. For example, John Gohn, president of Noonan, testified that he was familiar with the practice of discounting notes. The defendants and their counsel knew that plaintiff was a German company with no use for American dollars, and hence they knew or should have known that the plaintiff desired to translate the settlement agreement into German currency as soon as possible. The desire to discount is the sole reasonable explanation for the agreement to deliver a negotiable note with guarantees. Indeed why agree to the delivery of any note at all if, as defendants now contend, the payment of $375,000.00 before December 31, 1974, discharged fully their contractual obligations under the settlement agreement. If the latter were the true intent of the parties, they need only have agreed to payment of the $375,000.00 on or before December 31, 1974, with no need for the execution and delivery of a note, since any failure to pay said sum would have constituted a breach of the agreement which plaintiff could have sued to enforce. *See* Skyline Sash, Inc. v. Fidelity and Casualty Co. of New York, W.D.Pa.1966, 267 F.Supp. 577. The defendants agreed to deliver a negotiable promissory note to plaintiff, and the only rational interpretation of the intentions of the parties in so doing is that this was to enable the plaintiff to discount it in order to convert the note payable in American dollars into German marks, the native currency of the plaintiff. Plaintiff had contracted originally for payment in Deutsche marks. While the settlement agreement was couched in terms of American dollars, undoubtedly at the insistence of the defendants, for this concession the defendants agreed to deliver to plaintiff's counsel within a reasonable time a negotiable note in the amount of $375,000.00 payable to the German plaintiff, with the unconditional guarantees of two internationally-known surety companies or, in the alternative, a letter of credit from Noonan's bank. These terms leave no doubt that the parties understood that plaintiff wanted a discountable note.

Therefore, the court holds that damages for devaluation of the dollar vis-a-vis the Deutsche mark were reasonably foreseeable and within the contemplation of the parties at the time the settlement agreement was entered into.

Finally, the damages can be calculated with reasonable certainty. The court has already held that the negotiable note for $375,000.00 should have been delivered to plaintiff's counsel no later than October 11, 1974. Such a note could have been discounted and converted into Deutsche marks by October 15, 1974, at which time plaintiff would have received for the note 934.062.06 Deutsche marks. The defendants in fact never delivered any note, but instead Noonan presented plaintiff's counsel with a certified check for $375,000.00 on December 27, 1974. Although plaintiff did not sell the check to the Deutsche Bank until January 7, 1975, at which time it received 888.000 Deutsche marks, the court holds that said check could have been sold to the Deutsche Bank by December 31, 1974, at which time plaintiff would have received 905.437.50 Deutsche marks. Therefore, plaintiff's damages equal the difference between 934.062.06 DM and 905.437.50 DM—i. e., 28.624.56 Deutsche marks (see Document No. 61).

The proper exchange rate to utilize to convert the Deutsche marks into American dollars in order to compute the damages in this action is the exchange rate on the date that the certified check could have been presented to the Deutsche Bank—to wit, December 31, 1974. Utilizing the rate of exchange of December 31, 1974, 28.624.56 DM equals $11,856.00 (see Document No. 63).

Thus the court holds that plaintiff's damages for the breach of the settlement agreement amount to $11,856.00. This amount will restore the plaintiff to

the condition it would have occupied if the settlement agreement had been fully performed. *See* Restatement, Contracts, § 329 & comment a; Adams v. Speckman, 1956, 385 Pa. 308, 122 A.2d 685.

■■ Under the general powers of the court, a settlement having taken place in a judicial proceeding, this court may direct a judgment directly in favor of one who has suffered damages as a result of a breach of the settlement agreement by a subscribing party. *See* Skyline Sash, Inc. v. Fidelity and Casualty Co. of New York, W.D.Pa.1966, 267 F.Supp. 577; *cf.* Bata v. Central-Penn National Bank of Philadelphia, 1972, 448 Pa. 355, 293 A.2d 343. The negotiation of a settlement is a part of a judicial proceeding and is a judicially-favored way of disposing of litigation. Petty v. General Accident Fire & Life Assurance Corp., 3 Cir. 1966, 365 F.2d 419, 421. When parties negotiate a compromise and settlement, this court has authority to see that it is carried out and to award damages for breach thereof. *See* Skyline Sash, Inc. v. Fidelity and Casualty Co. of New York, supra. To hold otherwise would undermine the judicially-favored resolution of litigation through settlement.

There remains plaintiff's request for an award of costs and counsel fees "covering all expenses for work performed since October 1, 1974 up to the date that this matter is in fact completed." Motion for Sanctions, p. 7.

■ Attorneys' fees and costs are not ordinarily recoverable and unless specifically authorized by statute are awarded only in extraordinary cases. Alyeska Pipeline Service Co. v. The Wilderness Society, 1975, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141. Exceptions to this general rule which are rooted in the inherent equity power of the courts consist of the power to assess attorneys' fees for the willful disobedience of a court order as part of the fine to be levied on a defendant, Toledo Scale Co. v. Computing Sale Co., 1923, 261 U.S. 399, 426–428, 43 S.Ct. 458, 67 L.Ed. 719; Fleischmann Distilling Corp. v. Maier Brewing Co., 1967, 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475, and the authority to award attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. F. D. Rich Co. Inc. v. Industrial Lumber Co., Inc., 1974, 417 U.S. 116, 129, 94 S.Ct. 2116, 40 L.Ed.2d 642; Vaughn v. Atkinson, 1962, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88; Lichtenstein v. Lichtenstein, 3 Cir. 1973, 481 F.2d 682; 6 Moore, Federal Practice ¶ 54.-77(2), p. 1348. *See* Alyeska Pipeline Service Co. v. The Wilderness Society, supra.

■ It is apparent that the facts of this case do not fall within any of the aforementioned exceptions and that plaintiff is not entitled to an award for counsel fees and costs. Obviously the defendants have not willfully disobeyed a court order. The defendants' failure to consummate the settlement agreement in a timely manner, thereby causing the plaintiff to seek enforcement of the settlement and damages caused by their delay, does not amount to bad faith. The defendants' actions were not taken vexatiously, wantonly, or for oppressive reasons. Performance of the settlement agreement required cooperative action by four defendants each of whom had rights and interests of its own to protect vis-a-vis the other defendants. While this fact does not excuse the delay in implementing the settlement contract, it does explain it so as to refute any claim of bad faith on the part of the defendants. Moreover, given the fact that the settlement agreement was ambiguous, the defenses raised by the defendants with respect to the motion for sanctions are not frivolous. *Cf.* Lichtenstein v. Lichtenstein, 3 Cir. 1973, 481 F.2d 682.

For the foregoing reasons, an award of attorneys' fees and costs, pursuant to the court's limited inherent equity power or pursuant to Rule 101.18(c) of the Local Rules of United States District

Court for the Middle District of Pennsylvania,[1] would be inappropriate.

Plaintiff's motion for sanctions will be granted in part and denied in part. The court will award damages in favor of plaintiff against the defendants jointly and severally in the amount of $11,856.00. Plaintiff's request for attorneys' fees and costs will be denied.

1. "RULE 101.18
 (c) Failure to Exercise Reasonable Diligence In Effecting Settlement of a Case.
 Whenever the Court finds that any party or lawyer in any case before the Court has acted in bad faith, or has failed to exercise reasonable diligence in effecting the settlement of such case at the earliest practicable time, the Court may impose upon any such party or lawyer the juror costs, including mileage and per diem, resulting therefrom. The Court may, in its discretion, hold a hearing to inquire into the facts with respect thereto."